## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| AXALTA COATING SYSTEMS LTD., | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| U.S. DEPARTMENT OF TRANSPORTATION, | ) | |
| FEDERAL AVIATION ADMINISTRATION, | ) | |
| | ) | |
| *Respondent.* | ) | |

### PETITION FOR REVIEW

Pursuant to 49 U.S.C. § 5127, 14 C.F.R. § 13.235 and Federal Rule of

Appellate Procedure 15, Petitioner Axalta Coating Systems Ltd. ("Axalta") hereby

petitions the Court for review of the Decision and Order of the Acting

Administrator for the U.S. Department of Transportation, Federal Aviation

Administration ("FAA"), Order No. 2023-06 ("Order") *In the Matter of Axalta

Coating Systems*, Docket No. FAA-2020-0958, dated June 7, 2023 and the Initial

Decision in that matter issued by the Department of Transportation, Office of

Hearings, Administrative Law Judge Douglas Rawald ("ALJ Decision"), dated

October 17, 2022.  The combined Order/ALJ Decision is attached.

Jurisdiction and venue are proper under 49 U.S.C. § 5127(a) because

Petitioner is aggrieved by the agency's final action and has its principal place of

business in Glen Mills, Pennsylvania.  This Petition is timely, being filed "not more than sixty days after the Secretary's action becomes final."  *Id.*

Respectfully submitted,

*/s/Jerry W. Cox*
Jerry W. Cox, Esq.
14561 Sterling Oaks Dr.
Naples, FL  34110
(703) 757-5866
jcox@potomacstrategyassociates.com

Counsel for Petitioner

August 1, 2023

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Petition for Review was served August 1, 2023, by First Class U.S. Postal Mail on the following:

Secretary Peter Buttigieg
U.S. Department of Transportation
1200 New Jersey Ave., S.E.
Washington, DC  20590

Mr. Billy Nolen
Acting Administrator
U.S. Department of Transportation,
  Federal Aviation Administration
800 Independence Ave., S.W.
Washington, DC  20591

Attorney General Merrick Garland
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC  20530

*/s/Jerry W. Cox*
Jerry W. Cox, Esq.

# ATTACHMENT

UNITED STATES DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, DC

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Axalta Coating Systems | ) FAA Order No. 2023-06 |
| | ) Served: June 7, 2023 |
| Dkt. No. FAA-2020-0958 | ) |

*Appearances:*
FOR THE RESPONDENT:    Jerry W. Cox, Esq.

FOR THE AGENCY:    Taneesha D. Marshall, Esq.,
Assistant Chief Counsel for
Aviation Litigation; Raymond
G. Carver, Jr., Esq.

## DECISION AND ORDER

Administrative Law Judge ("ALJ") Douglas M. Rawald issued an initial decision ("Initial Decision") holding that Respondent Axalta Coating Systems ("Axalta") knowingly violated 49 C.F.R. §§ 171.2(e)[1] and 173.24(b)(1)[2] when it shipped an improperly packaged can of paint on board an aircraft. Although the complainant sought a penalty of $11,000, the ALJ ordered Axalta to pay a civil penalty in the amount of $1,900.[3]

Both parties appealed.[4] Axalta seeks reversal of two interlocutory orders[5] and the Initial Decision. Axalta asserts several constitutional and procedural arguments. The complainant contends that the civil penalty is too low because the

---

[1] "No person may offer ... a hazardous material for transportation in commerce unless the hazardous material is properly ... packaged ... as required by applicable requirements of [Title 49, Subtitle B, Chapter I, Subchapter C] ...." *See* Initial Decision at 5 (citing 49 C.F.R. § 171.2(e) (2022)). A copy of the Initial Decision is found in Attachment A to this Decision and Order.

[2] "[E]ach package used for the shipment of hazardous materials under [Title 49, Subtitle B, Chapter I, Subchapter C] ... shall be ... closed, so that under conditions normally incident to transportation ... there will be no identifiable ... release of hazardous material into the environment." *See* Initial Decision at 5 (citing 49 C.F.R. § 173.24(b)(1) (2022)).

[3] Initial Decision at 9.

[4] Respondent's Brief on Appeal (hereinafter "Respondent's Appeal Brief"); Complainant Appeal Brief.

[5] Axalta challenges two interlocutory orders, i.e., the Order Denying Respondent's Motion to Dismiss (June 17, 2021), and the Order Denying Respondent's Motion for Disqualification of the ALJ (Sept. 19, 2022).

ALJ should have found that Axalta was a business that regularly ships hazardous material.[6] Complainant, on appeal, seeks a civil penalty of $9,500.[7]

I find that neither appeal has merit, and I affirm the Initial Decision in its entirety.

## I. Standard of Review

In all civil penalty appeals, the FAA decisionmaker reviews an ALJ's initial decision only to consider whether: (1) each finding of fact is supported by a preponderance of reliable, probative, and substantial evidence; (2) each conclusion of law is made in accordance with applicable law, precedent, and public policy; and (3) the administrative law judge committed any prejudicial errors.[8]

## II. Background

Axalta offered to FedEx for transportation by air a package containing one four-liter metal can of paint, described in shipping papers as hazardous material and flammable.[9] Axalta used a friction lid and metal retaining clips to close the can.[10] Axalta used a combination package, placing the can inside a plastic bag and then placing it inside a 4G fiberboard box.[11] However, at least one metal retaining clip failed to prevent paint from spilling from the can.[12] Likewise, the plastic bag failed to keep the paint from spilling into the box.[13] The box, as the last line of containment, failed as well. After transport, FedEx found the package was leaking paint, which required in-house cleanup at its facility.[14] An investigation found the paint can's closure method failed because at least one retaining clip came loose and the plastic bag was not leakproof.[15] As a result, the paint escaped from the

---

[6] Complainant's Appeal Brief at 9.

[7] *Id.* at 15.

[8] 14 C.F.R. § 13.233(b) (2023).

[9] Initial Decision at 3.

[10] *Id.*

[11] *Id.* at 5-6.

[12] *Id.* at 4.

[13] *Id.* at 5.

[14] *Id.* at 3-4.

[15] *Id.*

2

packaging into the environment.[16] ALJ Rawald ordered Axalta to pay a civil penalty of $1,900 for knowingly violating 49 C.F.R. §§ 171.2(e) and 173.24(b)(1).[17]

## III. Axalta's Appeal

Axalta raises several constitutional challenges as well as procedural issues concerning the pleadings, regulations, evidence, and the calculation of the civil penalty amount. None of the issues have merit.

### A. Constitutional Issues

Axalta challenges ALJ Rawald's appointment and contends his statutory tenure protection is an unconstitutional infringement on the President's power and obligation to "take Care that the Laws be faithfully executed."[18] Axalta also claims it has a right to a jury trial under the Seventh Amendment of the U.S. Constitution.[19] Finally, Axalta fashions due process arguments from the Department of Transportation ("DOT") management regulations and policy statements.

Agencies must not exceed their authority when reviewing constitutional claims. "[A]gencies ordinarily lack jurisdiction 'to adjudicat[e] ... the constitutionality of congressional enactments.'"[20] On the other hand, agencies have "an obligation to address properly presented constitutional claims" that "do not challenge agency actions mandated by Congress."[21] Thus, it is appropriate for the FAA decisionmaker to consider whether an FAA regulation is unconstitutionally vague because the issue does not challenge a congressional enactment.[22] In contrast, however, the FAA decisionmaker has opined that "the U.S. Courts of Appeals constitute a more appropriate forum" to challenge statutes (like the grant of FAA

---

[16] *Id at 5.*

[17] *Id.* at 9.

[18] Respondent's Appeal Brief at 7; Addendum 7 at 1, 5 (citing U.S. Const. art. II, § 3).

[19] The Seventh Amendment to the U.S. Constitution states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.

[20] *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of U.S.*, 264 F.3d 52, 62 (D.C. Cir. 2001) (citing *Thunder Basin Coal, Co. v. Reich*, 510 U.S. 200, 215 (1994).

[21] *Graceba Total Communications, Inc. v. F.C.C.*, 115 F.3d 1038, 1042 (D.C. Cir. 1997).

[22] *American Airlines*, FAA Order No. 1999-1 at 7 (Mar. 2, 1999).

jurisdiction found in 49 U.S.C. § 46301) as "inconsistent with the U.S. Constitution."[23]

The first two constitutional issues now before me fall into the category of challenges to statutes that are beyond review by the FAA decisonmaker. The other issues target agency actions that I can consider.

### 1. Constitutional Issues Not Appropriate for Administrative Review

#### a. Authority to Remove ALJs

Axalta's challenge to the ALJ's statutory removal protection is beyond the bounds of administrative review by an FAA decisionmaker. Those protections are found in 5 U.S.C. § 7521, not a DOT or FAA regulation or policy. Congress has not granted the FAA the authority to review the constitutional foundation of that statute.

#### b. Jury Trial

Axalta's claimed right to a jury trial under the Seventh Amendment and *Jarkesy v. SEC* is beyond review in this proceeding.[24] The relevant statute, 49 U.S.C. § 5123, requires a hearing but does not authorize a hearing before a jury. Instead, DOT and FAA hearings are conducted under 49 U.S.C. § 46102, which specifies that the proceedings are subject to the Administrative Procedure Act ("APA").[25] The APA provides for evidentiary hearings before the head of the agency, an ALJ, or such other employees designated by statute.[26] Congress did not authorize using a jury and judging the constitutionality of the APA is a matter for the judiciary.

While I refrain from determining the ultimate constitutional question, distinguishing FAA proceedings from the SEC's proceedings considered in *Jarkesy* is appropriate. The Fifth Circuit explained that proper assignment of a matter to an administrative forum "depends on whether the proceedings center on 'public rights.'"[27] Public rights do not include "traditional legal claims."[28] Traditional legal claims are those akin to common law actions available when the Seventh

---

[23] *Mauna Kea Helicopters*, FAA Order No. 97-16 at 5 (May 23, 1997).

[24] *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 452-53 (5th Cir. 2022), *en banc petition denied,* 51 F.4th 644 (5th Cir. 2022).

[25] 49 U.S.C. § 46102(a) (citing "subchapter II of chapter 5 of title 5," i.e., the APA).

[26] 5 U.S.C. § 556(b).

[27] *Jarkesy*, 34 F.4th at 453 (citing *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977)).

[28] *Id.* (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989)).

Amendment was adopted in 1791.[29]  Public rights, in contrast, are new causes of action "so closely integrated with a comprehensive regulatory scheme that the right is appropriate for agency resolution."[30]

The *Jarkesy* panel relied on William Blackstone's *Commentaries on the Laws of England* (1765) to conclude that the SEC's securities fraud charges were akin to old common law fraud actions seeking payment of damages to the victim and a fine to the king.[31]  Here, Axalta does not proffer—much less establish—an analogous, eighteenth-century cause of action.  Blackstone, Thomas Jefferson, and John Adams[32] would have no familiarity with the classification, packaging, and transportation of the corrosive and toxic chemicals developed in the twentieth and twenty-first centuries.  Interpretation and enforcement of the applicable regulations, especially by aircraft, would be beyond their ken.  In short, the statutory scheme found in Chapter 51 of Title 49 and the DOT's associated regulations has nothing in common with traditional legal claims available at the dawn of our Republic.

### 2. Reviewable Constitutional Challenges to Agency Actions

#### a. An appointment ceremony is not a constitutional prerequisite.

In the proceedings below, Axalta initially argued that ALJ Rawald lacked an appointment from the Secretary, as required by *Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044 (2018) (applying the Appointments Clause, U.S. Const. art. II, § 3).[33]  After ALJ Rawald entered his appointment letter into the record, Axalta changed its argument to complain that the appointment lacked public notice or a ceremony, describing it as a "secret" appointment that "avoid[ed] public accountability, thereby ignoring the purpose of the *Lucia* holding."[34]

This issue does not challenge an act of Congress.  Instead, Axalta asks me, the Acting FAA Administrator, to judge the Secretary's exercise of discretion over the level of pageantry used to appoint inferior officers.  This I will not do; I report to the Secretary, not the other way around.[35]  However, I can easily reject Axalta's legal theory.  Other than a recommendation from the Department of Justice, Axalta cites

---

[29] *Id.* at 452.

[30] *Id.* at 453 (citing *Granfinanciera*, 492 U.S. at 54).

[31] *Id.*

[32] *See id.* at 451 (expressing Jefferson's and Adams's views on jury trials).

[33] Respondent's Appeal Brief at 7.

[34] *Id.*; Respondent Brief in Opposition to Complainant Cross-Appeal and Answer to Complainant Motion to Strike at 7.

[35] 49 U.S.C. § 106(b).

to no authority supporting its argument that ALJ Rawald's appointment was ineffective absent a "public ceremony."[36] Neither *Lucia* nor the Seventh Amendment expressly or implicitly require public notice of ALJ appointments. Simply stated, a ceremony might be nice, but it is not legally required.

Regardless of whether ALJ Rawald received a ceremony, Secretary Chao appointed him before these proceedings commenced. The Secretary ratified ALJ Rawald's appointment on April 25, 2019.[37] Axalta filed its hearing request twenty-two months later, i.e., on February 26, 2021. I find that ALJ Rawald was properly appointed well in advance of the proceedings in this matter.

### b. Due Process: Prosecutorial Discretion, the Breakdown of the Penalty, and Bias Allegations

Axalta crafts two due process arguments out of internal policy statements and a rescinded DOT management regulation. It challenges the complainant's discretionary decision to seek a civil penalty.[38] It also challenges the degree of information the complainant provided as to its determination of the proposed penalty. Additionally, without relying on policies or regulations, Axalta claims that ALJ Rawald demonstrated a degree of bias that violated its right to due process. Inasmuch as these issues attack agency action based on agency directives or the ALJ's conduct, i.e., not Congressional enactments, I can properly consider them on appeal.

### (1) Exercise of Prosecutorial Discretion under DOT and FAA Policy

Axalta challenges the complainant's decision to seek a civil penalty rather than take a more collaborative approach under orders issued by the FAA since June 2015. These orders set forth various iterations of the FAA compliance philosophy in enforcing regulations that promote safety.[39] Axalta argues that language in these orders weighs heavily against seeking a civil penalty.[40] Axalta further points to a February 2019 internal policy memorandum governing enforcement actions issued

---

[36] Respondent's Appeal Brief, Addendum 7 at 3-4.

[37] *Id.*, Addendum 8 (Order Denying Respondent Motion for Disqualification with attached April 25, 2019, Ratification and Approval of Administrative Law Judge Appointment from DOT Secretary Chao).

[38] Respondent's Appeal Brief at 2-3.

[39] FAA Order No. 8000.373, "FAA Compliance Philosophy" (June 26, 2015); Order 2150.3B, "FAA Compliance and Enforcement Program," Ch. 13, (Oct. 1, 2007); FAA Order 800.369C, "Safety Management Systems" (June 24, 2020); FAA Order 2150.3C, Ch. 7, "Compliance and Enforcement Program" (Sept. 18, 2018).

[40] Respondent's Appeal Brief at 2-3.

by the DOT General Counsel at the time.[41] Ten months later, the DOT adopted that policy into a short-lived regulation in 49 C.F.R. Part 5.[42] Axalta cobbles these authorities together to claim a level of procedural due process it says it did not receive.

Axalta's argument fails for many reasons:

- *No rights created.* Axalta's authorities were not written to create enforceable rights. Chief among these authorities, the rescinded regulations in 49 C.F.R. Part 5, subpart D, ended with the following:

  > § 5.111 No third-party rights or benefits.
  > This subpart is intended to improve the internal
  > management of the Department. As such, it is for the use of
  > DOT personnel only and is not intended to, and does not,
  > create any right or benefit, substantive or procedural,
  > enforceable at law or in equity by any party against the
  > United States, its agencies, officers, or any person.[43]

- *Timing.* Neither the February 2019 DOT internal policy memorandum nor the December 2019 version of 49 C.F.R. Part 5 were in effect when

---

[41] *Id.*, Addendum 11 (Memorandum for Secretarial Officers and Heads of Operating Administrations (Feb. 15, 2019)).

[42] *Id.*, Addendum 12. The former version of 49 C.F.R. Part 5 stated: "The assessment of proposed or final penalties in a DOT enforcement action shall be communicated in writing to the subject of the action, along with a full explanation of the basis for the calculation of asserted penalties. In addition, the agency shall voluntarily share penalty calculation worksheets, manuals, charts, or other appropriate materials that shed light on the way penalties are calculated to ensure fairness in the process and to encourage a negotiated resolution where possible." 49 C.F.R. § 5.97 (2020).

[43] 5 C.F.R. § 5.111 (2020). Notably, other authorities Axalta cites (Respondent's Appeal Brief at 2-3) contain similar limitations as to their applicability:

- DOT's 2019 internal policy memorandum stated it was "not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its agencies, officers, or any person." Respondent's Appeal Brief, Addendum 11 at 13.

- Order 2150.3B states, "This order does not create any right or benefit, substantive or procedural, enforceable at law by any party against the FAA, its officers, or its employees." Order 2150.3B, "FAA Compliance and Enforcement Program" at 1-1 (Oct. 1, 2007).

- Order 800.369C states, "The requirements contained within this document are intended to help FAA organizations incorporate [Safety Management Systems] ... into their organizations" and "does not apply to external product/service providers." FAA Order 800.369C, "Safety Management Systems" at 3, n.1 (June 24, 2020).

- Order 2150.3C states, "This order is a staff manual for FAA personnel." FAA Order 2150.3C, "Compliance and Enforcement Program" at 1-1 (Sept. 18, 2018).

7

Complainant issued the Notice of Proposed Civil Penalty to Axalta on April 18, 2018. Thus, the prosecution decision occurred well before these internal rules went into effect.

- *Precedent.* Axalta is not the first respondent who would have preferred more collaborative treatment under the enforcement and compliance orders. But the precedent is clear:

  o "The Administrator will not review an agency attorney's decision to initiate a civil penalty action rather than taking administrative action."[44]

  o "The agency attorney's decision to commence a civil penalty action against a respondent is an exercise of prosecutorial discretion and is immune from review on appeal."[45]

Axalta's challenge to the complainant's exercise of discretion to prosecute it for hazardous materials regulations ("HMRs") violations has no merit, and ALJ Rawald properly denied Axalta's motion to dismiss.

### (2) The Complaint provided sufficient notice of the civil penalty amount.

Relying again on the rescinded regulations, Axalta charged that the Complaint lacked requisite details on calculating the proposed penalty. The ALJ rejected this assertion in an interlocutory order denying a motion to dismiss.[46] I, too, find that Axalta's argument lacks merit.

As quoted above, the rescinded regulations in 49 C.F.R. Part 5 created no rights Axalta could rely upon. Enforcement of internal management regulations is a matter of employee discipline within the DOT, not a cudgel for respondents to wield. Moreover, as ALJ Rawald observed, the applicable procedural regulations only require notice of the proposed penalty amount and provide the opportunity for discovery.[47]

---

[44] *Offshore Air*, FAA Order No. 2002-7 at 4 (Apr. 16, 2002). *See also, M & R Helicopters, LLC,* FAA Order No. 2013-4 at 16 (Sept. 5, 2013).

[45] *Regency Air, LLC,* FAA Order No. 2020-2 at 13-14 (May 27, 2020); *see also American Airlines, Inc.,* FAA Order No. 1989-6 (Dec. 21, 1989) (no denial of due process arises from the exercise of prosecutorial discretion under internal procedures).

[46] Order Denying the Respondent's Motion to Dismiss and Directing the Respondent to File an Answer at 5-6 (June 17, 2021).

[47] *Id.* at 5 n.15 (citing 14 C.F.R. §§ 13.208(c), 13.220).

8

Axalta's argument that it was prejudiced by the insufficiency of the Complaint is unconvincing.[48] Even without considering initial civil penalty assessment procedures,[49] the Complaint avers facts to support the violations charged and the civil penalty sought.[50] Further, Axalta does not show it requested and was denied information regarding the civil penalty calculation in discovery. Thus, I find that any prejudice Axalta suffered from a lack of information regarding the basis for the sanction was self-imposed.

I find the ALJ did not err in denying the motion to dismiss on this issue.

**(3) The ALJ did not demonstrate bias and did not deny the right to due process.**

Axalta alleges ALJ Rawald's biases influenced the outcome in favor of the complainant.[51] Axalta relies on four arguments to demonstrate bias. They are: (1) the ALJ's statements in a prior case; (2) interrupting at the hearing; (3) coaching FAA counsel; and (4) allowing a non-expert to testify as an expert. None of these arguments withstand scrutiny individually, and collectively, they do not demonstrate bias.

- *Statements in a prior case*. Axalta claims ALJ Rawald previously demonstrated bias in statements made in an unrelated case prosecuted in October of 2016.[52] The ALJ made the statements during a pre-hearing conference when he dressed-down the complainant's attorney for ignoring his orders. According to Axalta, ALJ Rawald directed his frustration at the head of the regional enforcement staff, stating: "There needs to be someone from the FAA who is on this case and ready to prosecute this case, because I'm proceeding with this case, I'm moving this case forward either way."[53] Axalta says this shows ALJ Rawald was willing to "prosecute the case himself."[54]

---

[48] *See* Respondent's Brief in Opposition to Complainant's Cross-Appeal and Answer to Complainant's Motion to Strike at 3.

[49] "[W]ell before the initiation of the entire hearing process under subpart G of the regulations, the parties have the opportunity to discuss and negotiate a proposed civil penalty as provided in subpart C of the regulations." *Presidential Aviation, Inc.*, FAA Order 2020-7 at 18 (citing 14 C.F.R. § 13.16(f)(2) (2020)).

[50] *See* Complaint, *passim.*

[51] Respondent's Appeal Brief at 5-6.

[52] *Id.* at 5 (citing *Fisher Scientific Co.*, LLC, FAA-2015-1321, and indicating the case was withdrawn by the complainant and subsequently dismissed with prejudice by ALJ Rawald).

[53] *Id.*

[54] *Id.*

No attorney, judge, or casual observer could reasonably interpret this as bias *in favor* of the agency or its apparently dilatory counsel. Without a doubt, forcing the agency to move forward without attentive counsel would harm the agency's litigation position, not the respondent's. There is no reasonable interpretation of ALJ Rawald's statement other than it expressed frustration with the FAA counsel's absence and inaction in the case's prosecution.[55] Axalta makes no showing how ALJ Rawald's statement demonstrates bias or a "high degree of favoritism or antagonism as to make a fair judgment … impossible"[56] or even how that case is relevant to the instant matter. This argument is frivolous.

- *Interruptions of Axalta's Cross-Examination.* Axalta characterizes ALJ Rawald's interruptions of Axalta's cross-examination as "misconduct" that demonstrates bias.[57] The hearing transcript does not support Axalta's assertions.

  The transcript shows the ALJ actively listened during the hearing and worked in tandem with Axalta's counsel to ensure a clear and accurate record.[58] Many of the examples Axalta characterizes as prejudicial actually show ALJ Rawald impartially regulating the course of the hearing. He clarified the page numbers of exhibits considered in testimony, rearticulated confusing questions for the witness, and responded to objections.[59] Axalta mischaracterizes these interactions as "interruptions" when they are simply examples of ALJ Rawald properly exercising his authority to "[r]egulate the course of the hearing in accordance with the rules [of Subpart G]."[60]

  Counsel for Axalta points to no instance in the hearing when he objected to ALJ Rawald's efforts. On the contrary, at one point, ALJ Rawald clarified a question that Axalta's counsel posed to the witness. Axalta's counsel responded: "Thank you, Judge. You're doing a better job than I am."[61] No excerpt from the transcript supports Axalta's claim that ALJ Rawald's regulation of the hearing was anything but fair and impartial. Again, this is a frivolous argument.

---

[55] *Id.;* Addendum 8 at 4-5.

[56] *See Liteky v. U.S.,* 510 U.S. 540, 555 (1994); *Schweiker v. McClure,* 456 U.S. 188, 195 (1982) (ALJs presumed to be unbiased); *Bunnell v. Barnhart,* 336 F.3d 1112, 1115 (9th Cir.2003) (actual bias must be shown).

[57] Respondent's Appeal Brief at 6.

[58] *See* Hr'g Tr. at 29:10-23.

[59] *See e.g.,* Hr'g Tr. at 29, 31, 33-35; 40-41, 43, and 45-46.

[60] 14 C.F.R. § 13.205(a)(6) (2023).

[61] Hr'g Tr. at 33.

- *Coaching Complainant's Counsel.* Axalta contends that ALJ Rawald improperly coached Complainant's counsel concerning a violation of § 173.27(d), which was not specifically alleged in the Complaint.[62] Axalta argues this violated its right to due process because it had no advance notice of this additional violation nor a fair opportunity to contest it.[63] Axalta contends that had it known of this specific violation, it would have argued that it complied with § 173.22, which governs the shipper's responsibility to adhere to instructions from the packaging manufacturer.[64]

  Preliminarily, Axalta cites the ALJ's questions regarding Complainant's regulatory allegations.[65] Questioning counsel on a legal argument does not show inherent bias; in this case, the exchange reflects a genuine effort to understand the scope of the Complaint.[66] "Coaching" did not occur.

  As to prejudice, the complaint alleged Axalta violated 49 C.F.R. § 171.2(e), which expressly prohibits the transportation of hazardous material not properly packaged in accordance with specific HMRs like § 173.27(d) (packaging for air transport) and § 173.22 (shipper's responsibilities).[67] The Complaint also alleged basic facts relevant to the hazardous nature of the paint, the use of aircraft in transportation, improper packaging, improper closure, and the UN packaging number used to determine proper packaging.[68] These allegations put Axalta on sufficient notice to present evidence in its defense that it properly packaged the material for air transport. Axalta suffered no prejudice.

- *Allowing Opinion Testimony.* Axalta argues that ALJ Rawald allowed Complainant's sole witness[69] to testify as an expert without qualification and

---

[62] Respondent's Appeal Brief at 6, 10 (citing Hr'g Tr. at 107:3-9); 49 C.F.R. § 173.27(d) (2022).

[63] *Id.*

[64] *Id.* at 10; 49 C.F.R. § 173.22(a)(4)(i) (2022). To be exact, that regulation provides, "Except as otherwise provided in this part, a person may offer a hazardous material for transportation in a packaging or container required by this part ... [and for] a DOT Specification or UN standard packaging subject to the requirements of part 178 of this subchapter, a person must perform all functions necessary to bring the package into compliance with parts 173 and 178 of this subchapter...." 49 C.F.R. § 173.22(a)(4)(i) (2022).

[65] Respondent's Appeal Brief at 6 (citing Hr'g Tr. at 85, 86, 107).

[66] *See* Hr'g Tr. at 85:18-19; 86:7-8; 107:3-17.

[67] Complaint at ¶ 8(a).

[68] *Id.* at ¶¶ 3-7.

[69] The witness was the hazardous materials aviation safety inspector who investigated the incident that gave rise to this action. Hr'g Tr. 21:14-18; 22:7-9.

11

ruled inconsistently regarding opinion testimony.[70] This argument must be rejected.

Although Complainant's counsel never conducted *voir dire* to establish expert qualifications, Axalta's counsel never objected to any aspect of the direct testimony, much less opinion (lay or expert) testimony.[71] "A party may not assert the introduction of evidence as error unless a timely objection is made."[72] By failing to object at the appropriate time, Axalta waived this argument.[73]

In addition, Axalta does not appeal the evidentiary rulings themselves. Instead, it argues that the ALJ accepted opinions inconsistently. Again, Axalta did not object, but there are rulings by the ALJ on Complainant's objections during cross-examination. The rulings were correct and consistent with evidentiary principles.[74] In the one example, Judge Rawald overruled Complainant's objection to Axalta's cross-examination on an opinion reached during the witness's investigation.[75] This ruling was appropriate under Fed. R. Evid. 701 since the witness testified to opinions reached in his capacity as the investigator.[76] In another ruling, the ALJ sustained Complainant's objection to a question eliciting testimony on how gravity would affect paint.[77] This ruling was consistent with Fed. R. Evid. 702 and 703 since the witness was not proffered nor qualified as a physicist to render a scientific opinion. Without showing error—much less a pattern of biased errors—Axalta's argument must be rejected.

None of the four points raised above show bias. This allegation is unsupported by the record and has no merit.

---

[70] Respondent's Appeal Brief at 6.

[71] *See* Hr'g Tr. at 20-28.

[72] *USAIR, Inc.,* FAA Order No. 96-25 at 10 (Aug. 12, 1996).

[73] *Id.*

[74] The Federal Rules of Evidence do not apply to administrative proceedings but provide guidance in assessing the admissibility of evidence. *See Ventura Air Services, Inc.,* FAA Order No. 2012-12 at 21 n.29 (Nov. 1, 2012).

[75] Hr'g. Tr. at 36:18-37:4.

[76] Hr'g Tr. at 3:15-19; 36:14-37:18; 76:5-9.

[77] Hr'g Tr. at 40:11-21.

12

### B. Non-Constitutional Issues

#### 1. Sufficiency of the Complaint

49 U.S.C. § 5123(a) provides that a "person that *knowingly violates* this chapter or a regulation ... issued under this chapter is liable ... for a civil penalty...."[78] Although the Complaint alleges that Axalta "knowingly offered" a can of paint for shipment, Axalta would require Complainant to aver a "knowing violation" for the underlying charges.[79] In its view, the Complaint should have addressed "the state of mind of the person who packed the parcel for shipment," by alleging the person "knowingly violated" the regulations.[80]

Axalta demands specific phrasing not required by the procedural regulation nor the Federal Rules of Civil Procedure. The regulation succinctly describes the contents of a complaint:

> (c) *Contents.* A complaint shall set forth the facts alleged, any regulation allegedly violated by the respondent, and the proposed civil penalty in sufficient detail to provide notice of any factual or legal allegation and proposed civil penalty.[81]

Complaints are sufficient if "the respondent 'understood the issue' and 'was afforded full opportunity' to justify its conduct during the course of the litigation."[82] The regulation is like Rule 8(a) of the Federal Rules of Civil Procedure, which only requires pleading "facts sufficient to show that [the] claim has substantive plausibility."[83] Pleading intent is not expressly addressed by the FAA regulation above, but pleading intent in federal court only requires a general allegation in matters other than fraud or mistake.[84] No rule, however, requires "magic words to make out a claim."[85]

As stated, the Complaint alleges that Axalta "knowingly offered" a can of paint for shipment.[86] It also alleged that "Axalta knew, or in the exercise of reasonable

---

[78] 49 U.S.C. § 5123(a) (emphasis added).

[79] Respondent's Appeal Brief at 3-4.

[80] *Id.* at 4.

[81] 14 C.F.R. § 13.208(c) (2021). The 2021 version applied when the complaint was filed. It differs from the current version only by using the word "shall" rather than "must."

[82] *Aloha Airlines, Inc. v. Civil Aeronautics Bd.*, 598 F.2d 250, 262 (D.C. Cir. 1979).

[83] *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

[84] Fed. R. Civ. P. 9(b).

[85] *See e.g., Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022).

[86] Complaint at ¶ 1.

13

care would have known, the shipment contained paint."[87]  This second averment mirrors the statutory definition of "knowingly" found in 49 U.S.C. § 5123(a). That section states:

> (1) A person acts knowingly when—
>
>> (A) The person has actual knowledge of the facts giving rise to the violation; or
>>
>> (B) A reasonable person acting in the circumstances and exercising reasonable care would have that knowledge.[88]

Thus, although Axalta's counsel would prefer different wording in the Complaint, there is no basis for concluding that Complainant failed to adequately plead intent. The ALJ's finding reaching the same conclusion must be affirmed.[89]

### 2. The action was not time-barred.

Axalta argues that the action is time-barred under the five-year limitation found in 28 U.S.C. § 2462 because the Initial Decision was issued "five years and nine months after the alleged violation occurred."[90]  The argument is meritless because Axalta ignores the difference between the administrative process for assessing a penalty and the subsequent action in district court to enforce the assessment.

There is no statute of limitations for administrative assessment of a civil penalty under Title 49, Chapter 51, of the United States Code. Instead, by regulation, the FAA has a "stale allegations" rule found in 13 C.F.R. § 13.208(d). The regulation permits dismissal of a complaint if the complainant, lacking good cause, failed to issue a notice of proposed civil penalty within two years of an alleged violation.[91]  28 U.S.C. § 2462 is different. It states:

> ### § 2462 – Time for commencing proceedings
>
> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is

---

[87] *Id.* at ¶ 2.

[88] 49 U.S.C. § 5123(a).

[89] *See* Order Denying the Respondent's Motion to Dismiss and Directing the Respondent to File an Answer, at 2-3, 4 (June 17, 2021).

[90] Respondent's Appeal Brief at 12.

[91] 14 C.F.R. § 13.208(d) (2023). Although the FAA revised its procedural regulation in October 2021, the stale allegation rule did not materially change. *Compare* 14 C.F.R. § 13.208(d) (2021) *with* § 13.208(d) (2022).

14

found within the United States in order that proper service may be made thereon.

Axalta mistakenly argues that the underlying administrative proceedings must commence within the stated five years.[92] On the contrary, numerous courts hold that a claim under § 2462 to collect a civil penalty accrues "only after the administrative proceeding has ended, a penalty has been assessed, and the violator has failed to pay the penalty."[93] Thus, a subsequent collection action would accrue upon non-payment of civil penalty imposed by a final order. At that time, the statute of limitations would start to run, and the agency could bring a civil action under § 5123(d) to collect the unpaid penalty.[94] Axalta's legal argument, therefore, lacks merit.

Here, the violation occurred on January 10, 2017, and fifteen months later, the complainant issued the Notice of Proposed Civil Penalty on April 18, 2018.[95] This is within the stale filing rule. Further, the limitation period found in § 2462 has not started because the matter is still in the administrative adjudication process. Accordingly, there is no basis to find this matter as outside of an applicable limitation period.

### 3. The ALJ's Findings of Violations of 49 C.F.R. §§ 173.2(e) and 173.24(b)(1)

Axalta argues that ALJ Rawald erred in finding the complainant proved the violations of 49 C.F.R. §§ 171.2(e)[96] and 173.24(b)(1)[97] by the preponderance of reliable, probative, and substantial evidence.

---

[92] Without a pin citation, Axalta states that FAA Order 2150.3C applies the five-year period to administrative HMR enforcement. Respondent's Appeal Brief at 12. On the contrary, page 4-8 of the order cites the two-year limitation found in 14 C.F.R. § 13.208(d). FAA Order 2150.3C at 4-8.

[93] *U.S. Dep't of Labor v. Old Ben Coal Co.,* 676 F.2d. 259, 261 (7th Cir. 1982); *see also United States v. Meyer,* 808 F.2d 912, 914 (1st Cir. 1987) (addressing the precise phraseology of § 2462 (*i.e.,* "date when the claim first accrued") and observing that the standard definition of accrual is "[a] cause of action 'accrues' when a suit may be maintained thereon.") (quoting Black's Law Dictionary 19 (5th ed. 1979)).

[94] 28 U.S.C. § 2462 is designed to allow "an *additional* five-year period during which the government may sue to enforce the sanction." *Meyer,* 808 F.2d at 914 (emphasis in original). *See also Old Ben Coal,* 676 F.2d at 261 (holding that the five-year limitations period under § 2462 to enforce an unpaid order assessing civil penalty begins to run when the administrative order becomes final).

[95] *See* Respondent's Memorandum in Support of Motion to Dismiss at 3 (June 1, 2021).

[96] *See supra* note 1.

[97] *See supra* note 2.

15

### a. The Standard of Proof

The party with the burden of proof must prove its case by "a preponderance of the reliable, probative and substantial evidence."[98] The standard, "asks the [forum] simply to 'make a comparative judgment about the evidence' to determine whether a proposition is more likely true than not true based on the evidence in the record."[99]

### b. The preponderance of the evidence establishes the violations.

Preliminarily, I note that the record for decision consists entirely of evidence proffered by Complainant, i.e., testimony from the FAA investigator and three exhibits admitted without any objection from Axalta. In contrast, Axalta offered no exhibits, witnesses, or other evidence. Indeed, Axalta admitted many allegations in its Answer.

Comparing the Answer and Complaint shows several facts are not in dispute. Axalta admits it offered the package to FedEx for shipment, knowing and declaring it contained a four-liter can of paint.[100] The parties agree that paint is a hazardous material under 14 C.F.R. § 172.101.[101] They also agree that paint is in "hazard class 3, packing group II," and has a United Nations identification number of UN1263.[102]

But the Answer reveals factual issues that Axalta did not expressly admit. First, Axalta did not admit nor deny it "knowingly" offered the shipment.[103] Second, Axalta denied that the paint was not "properly packaged and in proper condition for shipment."[104] Finally, Axalta answered that it "lacks knowledge to confirm or deny" an allegation that FedEx discovered the leaking package.[105] Thus, the analysis on appeal must first examine the record to determine if evidence shows, more likely than not, that these three allegations are true. Second, the analysis must consider if the proven allegations established the alleged violations of the regulations.

---

[98] 14 C.F.R. § 13.223 (2023).

[99] *Almerfedi v. Obama*, 654 F.3d 1, 5 (D.C. Cir. 2011) (citing *Lindsay v. NTSB*, 47 F.3d 1209, 1213 (D.C.Cir.1995); *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993)).

[100] *Compare* Complaint ¶¶ 1 and 2 *with* Answer ¶¶ 1, and 7.

[101] *Compare* Complaint ¶ 3 *with* Answer ¶ 3.

[102] *Compare* Complaint ¶ 4 *with* Answer ¶ 4.

[103] *Compare* Complaint ¶ 1 *with* Answer ¶¶ 1 and 7.

[104] *Compare* Complaint ¶ 5 *with* Answer ¶ 5.

[105] *Compare* Complaint ¶ 6 *with* Answer ¶ 6.

### (1) FedEx discovered the leak.

Complainant submitted into evidence a DOT Hazardous Materials Incident Report ("Form 5800") prepared on January 10, 2017, by a FedEx Senior Safety Specialist.[106] The Form 5800 was accompanied by a FedEx Certification of Business Records.[107] That certification declares it to be a true copy of the record that was made at or near the time of the occurrence of the matters described in the document; it was made by a person with knowledge of those matters; and it was kept in the course of regularly conducted business activity and made by the business activity as a regular practice.[108] It was admitted into the hearing record as Exhibit 2, without limitation and with no objection "whatsoever."[109]

This Form 5800 leaves no doubt that FedEx found the package leaking.[110] Axalta offered no evidence supporting a contrary conclusion. Thus, despite the response in the Answer, the evidence shows more likely than not that FedEx discovered Axalta's leaking package.

### (2) Axalta "knowingly" offered the package to FedEx.

Although Axalta did not specifically respond to the allegation that Axalta "knowingly" offered the package for shipping,[111] the preponderance of the evidence establishes this fact. Photographs in hearing exhibit 3 show an address label, an air cargo sticker, and a signed shipping declaration listing Axalta's shipping office as the originator.[112] These documents would not be prepared without an underlying intent to offer the package for shipment. Again, Axalta offered no evidence to the contrary. Thus, the preponderance of the evidence shows that Axalta knowingly offered the package for shipping by air.[113]

### (3) Evidence of Improper Packaging

The Form 5800, the many photographs, and the testimony of the investigator regarding his observations provide sufficient circumstantial evidence to conclude that Axalta failed to properly package the paint for shipment by aircraft.

---

[106] Hr'g Ex. 2 at 5.

[107] Hr'g Ex. 2 at 1.

[108] *Id.*

[109] Hr'g Tr. at 4:14-18. *See also* Prehearing Conference Tr. at 21:20-22; 22:17-22; 23:18-21.

[110] Hr'g Ex. 2 at 5 (FedEx employee wrote, "The shipment was found leaking.").

[111] *Compare* Complaint ¶ 1 *with* Answer ¶ 1.

[112] Hr'g Ex. 3, at 2, 5, 6

[113] Alternatively, Axalta's refusal to admit, deny, or state lack of knowledge can be treated as an admission. *See* 14 C.F.R. § 13.209(e) (2023).

17

Circumstantial evidence is sufficient to prove this point.[114] While Axalta specifically attacks the ALJ's reliance on the Form 5800, again, Axalta presented no evidence of its own to counter the weight of Complainant's evidence.

Axalta argues ALJ Rawald erred in relying on the Form 5800 when he concluded the package was improperly packaged in violation of § 171.2(e).[115] As previously explained,[116] this is a business record admitted into the hearing record without limitation and with no objection "whatsoever" from Axalta.[117] The Form 5800 recorded information about the location of the incident, the mode of transportation involved, the carrier, the shipper, and the type of hazardous material released into the environment.[118] It recorded packaging information regarding the type, construction, capacity, and quantity in the shipment.[119] It also indicated that the incident resulted in "spillage" and required in-house cleanup.[120] The Form 5800 also commented on the events that led to the incident and a description of the package failure.[121]

ALJ Rawald relied in part on comments describing the package failure and found that the paint was "not properly packaged" in accordance with 173.27(d) and "should have had a lock ring," a "specific secondary means of closure" described as "the standard method of securing a can of paint for air shipment."[122]

Axalta now challenges the probative value of the Form 5800, arguing that an affidavit from the FedEx employee who prepared it raises doubts about its probative value.[123] Axalta, however, did not submit the affidavit as a hearing exhibit, and therefore, it was not part of the "exclusive record for decision."[124] Moreover, Axalta did not call the FedEx employee to the witness stand, even though that witness was present at the hearing.[125] Thus, there is no contrary evidence showing that the "source of the information or the method or circumstances of preparation [of the

---

[114] *See e.g., Envirosolve, LLC,* FAA Order No. 2006-2 at 12 (Feb. 7, 2006).

[115] Respondent's Appeal Brief at 8.

[116] *See supra* Section III, subsection B.3.b.1.

[117] Hr'g Tr. at 4:14-18. *See also* Prehearing Conference Tr. at 21:20-22; 22:17-22; 23:18-21.

[118] Hr'g Ex. 2 at 2.

[119] *Id.* at 3.

[120] *Id.*

[121] *Id.*

[122] Initial Decision at 4-5.

[123] Respondent's Appeal Brief, Addendum 10.

[124] 14 C.F.R. § 13.230(a) (2023). Further, "only exhibits admitted into evidence are part of the record before an administrative law judge." *Id.*

[125] Hr'g Tr. 25:10-14 (FedEx witness entered the hearing room).

18

Form 5800] indicate a lack of trustworthiness."[126]  I find ALJ Rawald did not err by
relying on the Form 5800.  Further, I find no error in concluding that the Form
5800 and the photographs, balanced against no contrary evidence, shows more
likely than not that Axalta failed to properly prepare the material for shipment.

### c. The preponderance of the evidence shows a violation.

Having found that the evidence supports the factual allegations in the
Complaint, I consider whether the evidence supports the finding that two
regulations were violated.  The first regulation cited in the Complaint, 49 C.F.R.
§ 171.2(e), prohibited Axalta from offering the package unless it was "properly ...
packaged ... and in a condition for shipment as required or authorized by the
applicable requirements of this subchapter ...."[127]  The Complaint also charged that
Axalta did not comply with 49 C.F.R. § 173.24(b)(1), which requires the shipment to
be properly "closed" so there is "no identifiable (without use of instruments) release
of hazardous material into the environment."  Collectively, the evidence supports the
allegations in the Complaint and the reasonable inference that Axalta failed to
properly package the paint when it offered it for shipment.  Axalta produced no
evidence of its own to show intervening events that raise questions as to this
inference and conclusion.[128]  Instead, Axalta challenges proof of the statutory intent
and the ALJ's consideration of underlying regulations.[129]

### (1)    Statutory Intent Satisfied

As discussed above in Section III, subsection B.1, having actual knowledge of the
relevant facts giving rise to the violation is enough to satisfy the "knowingly"
requirement for liability under the 49 U.S.C. § 5123(a).[130]  The preponderance of the
evidence shows that Axalta met the definition of "knowingly," found in 49 U.S.C. §
5123(a)(1), because of its actual knowledge of the relevant facts giving rise to the
violation.  A reasonable person acting under those circumstances and exercising
reasonable care would have known that Axalta's closure method was insufficient for
transport by aircraft.[131]  The ALJ did not err.

---

[126] Fed. R. Evid. 803(6).

[127] 49 C.F.R. § 171.2(e) (2023).

[128] *See e.g., Proud v. Civil Aeronautics Bd.*, 357 F.2d 221, 224 (7th Cir. 1966) ("no evidence was
introduced before the Board tending to show that some intervening event occurred"); *Administrator
v. Brown*, 4 N.T.S.B. 630, 632 (1982) ("Administrator did not present evidence ruling out any
possibility of tampering or sabotage is by no means fatal to his case.").

[129] Respondent's Appeal Brief at 11 and 10, respectively.

[130] 49 U.S.C. § 5123(a) provides that a "person that knowingly violates this chapter or a regulation ...
issued under this chapter is liable ... for a civil penalty...."

[131] Initial Decision at 7.

### (2) The ALJ properly considered other regulations.

I further find ALJ Rawald did not err in finding a violation of 49 C.F.R. §
171.2(e), based on Axalta's failure to comply with 49 C.F.R. § 173.27(d) and
173.27(d)(2), even if the latter two were not specifically identified in the
Complaint.[132]  Section 171.2(e) is a general regulation that expressly prohibits the
transportation of hazardous material not packaged adequately in accordance with
Title 49, Subtitle b, Chapter I, Subchapter C.  Based on the plain and ordinary
language of § 171.2(e), Axalta's failure to comply with §§ 173.27(d) and 173.27(d)(2)
automatically resulted in a violation of § 171.2(e) by operation of law.

### d. Conclusion on the merits: the ALJ did not err in finding a violation.

As the foregoing discussion demonstrates in detail, the admissions in the Answer
and the evidence in the record demonstrate that Axalta violated 49 C.F.R. §§
171.2(e) and 173.24(b)(1) as alleged in the Complaint.  I therefore affirm the Initial
Decision in this regard.

## IV.  Cross Appeals on the Civil Penalty Amount

Complainant argues that ALJ Rawald assessed too low of a penalty based on the
allegedly erroneous conclusion that Axalta is a simple "business entity" that does
not regularly transport hazardous material.[133]  Axalta argues that even if it failed
to comply with the HMRs, the civil penalty assessed is unsupported.[134]  Axalta
further challenges ALJ Rawald's use of expired Order 2150.3B to calculate the civil
penalty, noting that the order was canceled before the Complaint was filed.[135]  I find
no merit in any of these challenges and sustain the penalty determination.

### A. The FAA Decisionmaker's Review of Civil Penalty Assessments

Administrative law judges are subject to the agency's law and policy.[136]  In
reviewing an ALJ's sanction determination on appeal, the FAA decisionmaker may
reverse the initial decision if it does not comply with FAA sanction policy.[137]  If a
civil penalty assessed in an initial decision is inconsistent with the sanction policy,
the FAA decisionmaker has "both the authority and duty to impose the agency's
policy."[138]  The decisionmaker may assess the civil penalty directly rather than

---

[132] Appeal Brief at 10; Complaint at ¶ 8.

[133] Complainant Appeal Brief at 10.

[134] Respondent's Appeal Brief at 11.

[135] *Id.*

[136] *Robert M. Riter d/b/a Riter Aviation*, FAA Order No. 2019-1 at 5-6 (May 15, 2019).

[137] *Id.*

[138] *Id.* (citing *Warbelow's Air Ventures, Inc.*, FAA Order No. 2000-3 at 20 (Feb. 2, 2000)).

20

remand the case to the ALJ.[139] Imposing civil penalties using the policy promotes relative consistency in penalties for similar violations.[140] Consistent penalties ensure fairness and deterrence to others similarly situated.[141]

## B. ALJ Rawald used the correct version of FAA Order 2150.3.

To calculate an appropriate civil penalty, ALJ Rawald relied on the sanction guidance in FAA Order 2150.3B, which was effective for violations occurring before September 18, 2018. On that date, Order 2150.3C superseded FAA Order 2150.3B.[142] I find it was not error to use FAA Order 2150.3B because that was the policy in effect at the time of the violation, i.e., January 10, 2017.[143]

## C. Complainant failed to prove Axalta is more than a business.

The ALJ found that Complainant failed to prove by the preponderance of the evidence that Axalta was a business entity subject to the highest penalty range, i.e., a business that regularly offers, accepts, or transports hazardous material.[144] On appeal, Complainant argues it met its burden. Alternatively, it argues Axalta uses hazardous materials in the course of its business, which subjects it to the second highest range of penalties.[145] Neither argument has merit, and I affirm the ALJ's finding.

FAA Order 2150.3B uses four categories of offerors of hazardous material with increasing sanction ranges stated in the matrix in Figure C-1.[146] The matrix provides separate sanction ranges based on whether the offeror of the hazmat is: (A) an individual; (B) a business entity; (C) a business entity that uses or handles hazmat in the course of business; or (D) a business entity that regularly offers, accepts, or transports hazmat.

Complainant primarily argues that Axalta should be classified as a category D business that "regularly" offers, accepts, or transports hazardous material. Such businesses can include manufacturers, freight forwarders, distributors, or even

---

[139] *Mole-Master*, FAA Order No. 2010-11 at 9 (Jun.16, 2010).

[140] *Regency Air, LLC*, FAA Order 2020-2 at 15 (May 27, 2020).

[141] *Id.*

[142] Initial Decision at 7.

[143] *Ventura Air Services, Inc.*, FAA Order No. 2012-12 at 25 (Nov. 1, 2012) (applying superseded FAA Order 2150.3A because it was in effect at the time of the violation).

[144] Initial Decision at 8 (citing to Hr'g Tr. at 88).

[145] Complainant's Appeal Brief at 10-15.

[146] FAA Order 2150.3B at C-12, Fig. C-1. Notably, the table (Fig. C-1) uses capital letters to designate the four categories, but the definitions on pages 14 to 16 are organized alphabetically and use lowercase letters that do not correspond with the capital letters used in the table.

catalogue companies, so long as their products are classified as hazardous materials.[147] These firms, by their nature, are considered firms that "regularly" offer, accept, or transport hazardous materials. Complainant, however, did not offer evidence on either the nature of Axalta's business or the regularity of its shipments. Indeed, on the same page of its brief, Complainant asserts that Axalta is an "importer," but in the very next paragraph, Complainant claims Axalta is a "manufacturer."[148] Regardless, the evidence is indeterminate on the nature of the business or the regularity of shipments:

- *Exhibit 3 – Photographs.* The photographs show the shipping box, the inner shipping bag, the clips and the top of a metal can, and a mess of spilled paint. The photographs do not show, however, the product label on the paint can, which could reveal a brand name, product source, etc. In other words, the photographs do not indicate who manufactured the paint in question.

- *Exhibit 4 – A Safety Data Sheet ("SDS") with Axalta's markings.* Complainant argues that only importers or manufacturers prepare an SDS, as shown by OSHA regulations at 29 C.F.R. § 1910.1200(g). The SDS lists Axalta as the importer of the hazardous material[149] and explains that "suppliers" provided Axalta with the information in the document.[150] The definition of an "importer" does not describe a firm that "regularly" ships hazardous materials. Instead, it is merely "the first business with employees within the Customs Territory of the United States which receives hazardous chemicals produced in other countries for the purpose of supplying them to distributors or employers within the United States."[151] Under this definition, a firm that imports an item once is still an importer obligated to produce an SDS. Further, the quoted definition distinguishes "importers" from "distributors." Thus, the fact that Axalta wrote the SDS does not establish that it "regularly" offers, accepts, or transports hazardous material.

- *The Hearing Transcript.* The arguments of counsel found in the transcript are not evidence.[152] In particular, the reference to Axalta's counsel's discussion regarding a theoretical shipper of thousands of parcels a week is not an evidentiary concession.[153] Similarly, Complainant's own closing

---

[147] FAA Order 2150.3B at C-14.

[148] *Compare* Complainant's Appeal Brief at 11, line 3 *with* line 12.

[149] Hr'g Ex. 4 at 1.

[150] *Id.* at 11.

[151] 29 C.F.R. § 1910.1200(c) (2023).

[152] *Liberty Foundation, Inc.*, FAA Order No. 2017-4 at 14 (Dec. 26, 2017) (citing *Delaware Skyways, LLC*, FAA Order No. 2005-6 at 8 (Mar. 18, 2005.)

[153] *See* Complainant's Appeal Brief at 12 (citing Hr'g. Tr. 104).

argument does not establish that Axalta is a manufacturer.[154] Finally, the investigator's conclusion that "it's an Axalta product" is based on the SDS, which is a poor foundation, as discussed above.[155]

Considering the indeterminate evidence presented, I cannot agree with Complainant's position the evidence supports a finding that Axalta is a business subject to the highest penalties in the penalty matrix. Complainant's alternative argument suffers the same fate. At most, and as found by the ALJ, the evidence only demonstrates that Axalta is a "business entity" for the purpose of the penalty matrix.

### D. The ALJ assessed an appropriate civil penalty.

Having disposed of Complainant's argument to raise the civil penalty amount, I now turn to Axalta's argument to lower the ALJ's determination. Axalta asserts that the ALJ assumed the role of a "super-prosecutor" by rejecting the proposed penalty of $11,000 but substituting the ALJ's own assessment of $1,900. I find no reason to alter the ALJ's penalty determination.

The Administrator has previously addressed the distinction between the complainant's proposed civil penalty and the ALJ's determination. The case of *Presidential Aviation, Inc.* explains that the complainant's stated amount is only proposed, whereas the ALJ's determination is an exercise of vested discretion to apply the law to the facts in reaching a monetary penalty.[156] An ALJ that properly exercises vested discretion does not usurp the role of a prosecutor.

As the ALJ noted, FAA Order 2150.3B incorporates the considerations that Congress requires for assessing a civil penalty.[157] In particular, the ALJ properly identified this paint as a hazard class 3, packing group II, which falls into risk category A found in Table C-2 of the order. Category A materials create the highest risk and justify a higher penalty. In a proper exercise of discretion, the ALJ set the penalty to the middle of the high third of the penalty ranges found in Table C-1, or $950 for each circumstance of the violation.[158] In this matter, there was a packaging violation ($950) and a release into the environment ($950). Aggregating

---

[154] *See id.* at 11 (citing Hr'g. Tr. 89).

[155] Hr'g Tr. at 28.

[156] *See Presidential Aviation, Inc.,* FAA Order No. 2020-7 at 14 (Nov. 3, 2020) (ALJs are "vested with the discretion to apply the law to [the] facts in reaching a monetary penalty.").

[157] Initial Decision at 8.

[158] Two circumstances are involved, faulty packaging and a release into the environment. Both have a penalty range of $250 to $1,100. The top third of this range, which reflects the "maximum weight" for Category A materials, would be $828 to $1,100. Rounded in Axalta's favor leads to $800 to $1,100. The middle of that rounded division is $950.

both yields $1,900 and is in line with Table C-1. Accordingly, I affirm the ALJ's assessment of $1,900.

V. Conclusion

Based on the preceding discussion, I deny both appeals entirely. I affirm the Initial Decision and the assessment of a civil penalty of $1,900.*

Billy Nolen
ACTING ADMINISTRATOR
Federal Aviation Administration

*This is a final order. Within 60 days of service of this order, the respondent may file a petition for review in the U.S. Court of Appeals for the District of Columbia Circuit or the U.S. Court of Appeals for the Circuit in which the respondent resides or has its principal place of business. 14 C.F.R. § 13.235 (2023).

**SERVED:  October 17, 2022**

U.S. DEPARTMENT OF TRANSPORTATION
OFFICE OF HEARINGS
WASHINGTON, DC

| | | |
|---|---|---|
| In The Matter Of: | ) | |
| | ) | Docket No. FAA-2020-0958 |
| Axalta Coating Systems | ) | |
| | ) | Case No. 2017SO700055 |
| Respondent | ) | |

**INITIAL DECISION**

### 1.  Pertinent Procedural History

On February 4, 2021, the Complainant served the Respondent a Final Notice of Proposed Civil Penalty in the amount of $11,000.

On February 26, 2021, the Respondent filed a Request for a Hearing, which the Complainant received on March 2, 2021.[1]  On March 9, 2021, the Complainant timely filed its complaint.

On April 8, 2021, the Respondent filed a Motion to Dismiss Complaint for Insufficiency.

On May 3, 2021, the Complainant filed its response to the Respondent's Motion to Dismiss.

On June 1, 2021, the Respondent filed a memorandum in support of its Motion to Dismiss.

On June 17, 2021, the undersigned judge appointed himself to this proceeding, and issued an order denying the Respondent's Motion to Dismiss and directing the Respondent to file an answer by July 2, 2021.

The Respondent filed its answer on July 1, 2021.

On June 9, 2022, the undersigned judge provided notice that a hearing in this matter would be held in Washington, DC, beginning on September 20, 2022, at 9:00 a.m. local time.

On August 30, 2022, the Respondent filed a Motion to Quash the subpoena issued to Michael Hoysler on August 9, 2022.  The Complainant filed its response to this motion on September 12, 2022.  On September 14, 2022, the undersigned judge issued an Order Denying the Respondent's Motion to Quash Subpoena.

On September 8, 2022, the Respondent filed a Motion for Disqualification of Douglas Rawald as an Administrative Law Judge, which the undersigned judge denied on September 19,

---

[1] *See* Complaint at 1.

2022.

At the hearing, James H. Dunfee, Jr. appeared on behalf of the Complainant; Jerry W. Cox, appeared on behalf of the Respondent.

On October 3, 2022, the Respondent filed a motion entitled "Correction of Factual Misrepresentation and Errata." In addition to pointing out that the transcript used the incorrect acronym in reference to the Pipeline and Hazardous Materials Safety Administration,[2] the Respondent requested that the undersigned judge consider the transcript of a March 15, 2022 deposition of Thomas Kenny when deciding this case. On October 12, 2022, the Complainant filed a response in opposition to the request to consider this transcript. The undersigned judge hereby denies the Respondent's request. Notably, the parties had until August 8, 2022, to submit any evidence they wished to have considered at the hearing in this case. In a filing dated August 8, 2022, the Respondent noted it did "not propose to introduce any exhibits at the hearing."[3] Further, the Respondent reiterated this position during a prehearing conference on September 1, 2022,[4] and again during the hearing in this matter on September 20, 2022.[5] This late-filed evidence was therefore not considered in reaching a decision in this matter.

Based upon the evidence presented at the hearing and the applicable law, the undersigned judge has come to the following decision.

## 2.  Summary of Complainant's Allegations

The Complainant alleges that, on or about January 10, 2017, the Respondent knowingly offered a can of paint, classified as a hazardous material under 49 C.F.R. § 172.01, for shipment by Federal Express ("FedEx").[6] The Complainant further alleges that the can of paint was not properly packaged and so leaked while in transit.[7] The Complainant alleges that the conduct resulted in violations of 49 C.F.R. §§ 171.2(e), 173.24(b)(1), and 173.173(b).[8]

---

[2] A corrected copy of the transcript, which replaced "FMCSA" with "PHMSA" at the following locations: page 9, line 7; page 9, line 10; page 10, line 15; page 30, line 8; and page 96, line 14, has been added to the record for this case with the FAA Hearing Docket Clerk. Any reference in this decision to the "Hearing Transcript" is to the corrected version.

[3] Respondent's Response to Order Served June 9, 2022 at 2.

[4] *See* Sep. 1, 2022 Prehearing Conference Transcript at 24.

[5] *See* Hearing Transcript at 4-5.

[6] *See* Complaint at 1.

[7] *See* Complaint at 2.

[8] *See* Complaint at 2.

For these alleged violations, the Complainant seeks a civil penalty of $11,000.[9]

### 3. Standard of Proof

The pertinent regulations at 14 C.F.R. § 13.224(a) and (c) place the burden of proof on the agency, except in the case of an affirmative defense, at which time the burden shifts to the party asserting the affirmative defense. In accordance with 14 C.F.R. § 13.223, the burden of proof in a civil penalty action is a "preponderance of reliable, probative, and substantial evidence." Because circumstantial evidence can be reliable, probative, and substantial,[10] a party may use circumstantial evidence to sustain its burden of proof.[11]

### 4. Factual Findings

After considering the pleadings filed in this case and the testimony and evidence admitted at the hearing, the undersigned judge finds the following facts to have been proven by a preponderance of the evidence.

On or about January 10, 2017, the Respondent knowingly offered a shipment containing one four-liter capacity metal can of paint to FedEx for transportation by air under FedEx Priority Overnight Air Service tracking no. 640273907294.[12] Paint is classified as a hazardous material under 49 C.F.R. § 172.101.[13] Paint is in hazard class 3, Packing Group II, and has an assigned identification number of UN 1263.[14] At the time it was shipped, the package included shipping papers that indicated the package contained a hazardous material.[15] The package also bore a label indicating that it contained a flammable liquid.[16] The paint was packaged within a metal paint can with a friction lid, which was then inside of a plastic bag, which was in turn inside of a 4G fiberboard box.[17] The friction lid on the paint can was secured by metal retaining clips.[18]

After it had been transported by a cargo aircraft, the package was subsequently discovered to be leaking paint while being handled at a FedEx sort center.[19] A FedEx Senior Safety Specialist,

---

[9] *See* Complaint at 2.
[10] *See In re America West Airlines*, FAA Order No. 96-3 at 31 (Decision and Order, Feb. 13, 1996) (referring to certain circumstantial evidence as "strong").
[11] *See In re Continental Airlines, Inc.*, FAA Order No. 90-12 at 20 (Decision and Order, Apr. 25, 1990).
[12] *See* Complaint at 1, ¶ 1 and Answer at 1, ¶ 1.
[13] *See* Complaint at 1, ¶ 3 and Answer at 1, ¶ 3.
[14] *See* Complaint at 2, ¶ 4 and Answer at 1, ¶ 4.
[15] *See* Hearing Transcript at 25-26. *See also* Ex. 3 at 6.
[16] *See* Hearing Transcript at 27. *See also* Ex. 3 at 18.
[17] *See* Ex. 2 at 3 and Ex. 3 at 1 and 7-16.
[18] *See* Ex. 2 at 5 and Ex. 3 at 12-15. *See also* Hearing Transcript at 26-27.
[19] *See* Ex. 2 at 4.

Michael Hoysler, noted that the paint can's closure had failed.[20]  Specifically, at least one of the metal retaining clips had come loose, allowing the lid to open and the paint to leak outside of the metal can during flight.[21]  Mr. Hoysler further noted that the paint can should have had a ring lock, rather than metal retaining clips, before being offered for shipment by air.[22]  After leaking out from the metal can, the paint then leaked through the plastic bag and the outer fiberboard box.[23]  The leak required in-house cleanup at the FedEx facility.[24]

### 5.  Discussion of Alleged Violations

a.  *The paint was not properly packaged for shipment by air.*

According to 49 C.F.R. § 173.27(d), in order to be transported by air:

> The body and closure of any packaging must be constructed to be able to adequately resist the effects of temperature and vibration occurring in conditions normally incident to air transportation.  Inner packaging or receptacle closures of combination packages containing liquids must be held securely, tightly and effectively in place by secondary means.  Examples of such secondary methods include: Adhesive tape, friction sleeves, welding or soldering, locking wires, locking rings, induction heat seals, and child-resistant closures.  The closure device must be designed so that it is unlikely that it can be incorrectly or incompletely closed. … (2) … When a secondary means of closure cannot be applied or is impracticable to apply to an inner packaging containing liquids of Packing Groups II and III, this requirement may be satisfied by securely closing the inner packaging and placing it in a leakproof liner or bag before placing the inner packaging in its outer packaging.

In this case, the secondary means of ensuring closure, the metal retaining clips, were inadequate to withstand the conditions normally incident to flight.  As noted by Mr. Hoysler and listed in 49 C.F.R. § 173.27(d), there are other secondary closure methods that should have been used that would have been able to ensure the paint stayed within the can during flight.

The regulations at 49 C.F.R. § 173.27(d)(2) allow for the use of a leakproof bag in lieu of a secondary means of closure for Packing Group II materials if a secondary means of closure cannot be applied or is impracticable.  The Respondent did not offer any evidence that a secondary means of closure could not have been used or would have been impracticable; in fact,

---

[20] *See* Ex. 2 at 3 (where code 109 is listed in response to "What failed?").  Page 9 of PHMSA's Guide for Preparing Hazardous Materials Incidents Reports (Rev. Jan 2004) defines code 109 as "Closure (e.g., Cap, Top, or Plug)."  Publicly available at https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/docs/reporting_instructions_rev.pdf.

[21] *See* Ex. 2 at 5. *See also* Ex. 3 at 12-15 and Hearing Transcript at 26-27.

[22] *See* Ex. 2 at 5.

[23] *See* Ex. 3 at 1, 3, 7, 8, 10, 11, and 16.

[24] *See* Ex. 2 at 4.

Mr. Hoysler made clear in Ex. 2 that a specific secondary means of closure, a ring lock, was the standard method of securing a paint can for air shipment.[25] Further, as is evident here, the plastic bag that was placed around the paint can was not leakproof,[26] and so did not meet these requirements. The hazardous material was therefore not properly packaged for flight in that its closure failed to meet the regulatory requirements.

  b. *The hazardous material was offered for shipment when not properly packaged.*

Pursuant to 49 C.F.R. § 171.2(e), "[n]o person may offer ... a hazardous material for transportation in commerce unless the hazardous material is properly ... packaged... as required ... by applicable requirements of [Title 49, Subtitle B, Chapter I, Subchapter C] ..." In this case, the Respondent offered a four-liter can of paint, a hazardous material, for shipment by air without ensuring its closure met the requirements codified at 49 C.F.R. § 173.27(d), which is found within Title 49, Subtitle B, Chapter I, Subchapter C. As such, the Respondent offered the hazardous material for shipment when it was not properly packaged, and so violated 49 C.F.R. § 171.2(e).

  c. *The paint can was not properly closed for air transportation, and as a result the*
   *hazardous material was released into the environment.*

Pursuant to 49 C.F. R. § 173.24(b)(1), "[e]ach package used for the shipment of hazardous materials under [Title 49, Subtitle B, Chapter I, Subchapter C] shall be ... closed, so that under conditions normally incident to transportation" the hazardous material will not be released into the environment. In this case, the lid of the paint can was not secured with a secondary method, and so the paint was able to leak out of the can, through the inner bag, and through the outer fiberboard box.[27] This then required clean-up at the FedEx sorting facility.[28] In leaking out of the box, the paint was released into the environment.

  d. *The packing complied with the requirements of 49 C.F.R. § 173.173(b).*

Pursuant to 49 C.F.R. § 173.173(b), paint must be packaged "[a]s prescribed in § 173.202 of [Part 173]" because it "is a Packing Group II material." In this case, the paint was packaged in a combination package, consisting of an outer packaging of a 4G fiberboard box and an inner packaging of a metal receptable. This is an authorized combination under 49 C.F.R. § 173.202,

---

[25] Ex. 2 at 5.
[26] *See* Ex. 3 at 7, 10, and 11.
[27] *See* Ex. 3 at 1, 3, 7, 8, 10, 11, and 16.
[28] *See* Ex. 2 at 4

and so the Respondent is found to have complied with the requirements of 49 C.F.R.
§ 173.173(b).

### 6. Civil Penalty Amount

As explained above, the undersigned judge has found that the Respondent violated 49 C.F.R.
§§ 171.2(e) and 173.24(b)(1). The remaining issue, then, is determining the appropriate civil
penalty to be assessed for these violations, if any.

The Complainant sought a civil penalty of $11,000 for the violations alleged in the
complaint.[29] The burden of justifying the proposed civil penalty falls upon the Complainant.[30]
In attempting to meet this burden, however, the Complainant provided little evidence about how
the proposed civil penalty amount was assessed.[31]

An appropriate civil penalty must reflect the totality of the circumstances surrounding the
violation,[32] while providing enough "bite" to serve as a deterrent to both the current violator and
the industry as a whole in order to promote the goal of safety.[33] Further, Congress has mandated
that adjudicators consider the following factors when assessing a civil penalty involving
hazardous materials violations:

> (1) the nature, circumstances, extent, and gravity of the violation; (2) with respect to the violator, the
> degree of culpability, any history of prior violations, the ability to pay, and any effect on the ability to
> continue to do business; and (3) other matters as justice may require.[34]

The undersigned judge considered all of these factors in assessing an appropriate civil penalty.

Further, while the undersigned judge is not expressly required to follow the provisions of the
FAA's published sanction policies,[35] they can provide guidance.[36] The FAA's current guidance

---

[29] *See* Complaint at 2.

[30] *See In re Northwest Airlines, Inc.,* FAA Order No. 1990-37 at 7 (Decision and Order, Nov. 7, 1990) (finding the
FAA bore the burden of justifying the amount of the civil penalty it sought.).

[31] Complainant's counsel explained how the Complainant arrived at the amount of the proposed civil penalty during
his closing argument. *See* Hearing Transcript at 87-90. The arguments of counsel, however, do not constitute
evidence. *See In re Conquest Helicopters, Inc.,* FAA Order No. 94-20 at 3 (Decision and Order, June 22, 1994)
(*citing In re Shell v. Miss. Pacific Railroad Co.,* 684 F.2d 537, 542 (8th Cir. 1982) (finding statements made during
closing arguments are not evidence.)).

[32] *See In re Ventura Air Services, Inc.,* FAA Order No. 2012-12 at 26 (Decision and Order, Nov. 1, 2012); *In re
Folsom's Air Service, Inc.,* FAA Order No. 2008-11 at 14 (Decision and Order, Nov. 6, 2008).

[33] *See In re Toyota Motor Sales, USA, Inc.,* FAA Order No. 1994-28 at 11 (Order and Decision, Sept. 30, 1994); *In
re Charter Airlines, Inc.,* FAA Order No. 1995-8 at 28 (Decision and Order, May 9, 1995).

[34] 49 U.S.C. § 46301(e). *See also* 14 C.F.R. § 13.16(c).

[35] *See Folsom's Air Service, Inc.,* FAA Order No. 2008-11 at 14 (finding that because administrative law judges are
not agency personnel, they are not expressly required to follow the FAA's civil penalty guidance).

[36] *See In re Air Carrier,* FAA Order No. 1996-19 at 7 (Decision and Order, June 4, 1996) (*citing Northwest Airlines,
Inc.,* FAA Order No. 1990-37 at 8).

would fall under Category A.[53]  According to Figure C-2, material in Category A should be assigned a maximum weight within the applicable civil penalty range.[54]

The answer to each of the remaining questions is "no", and so the civil penalty for each violation in this case should be assessed in the maximum section of the applicable range.[55]  The maximum portion of the applicable range, $250 to $1,100, would be approximately $800 to $1,100.  In this case, given all the facts and circumstances in the record, the undersigned judge finds a penalty of $950 per violation appropriate, resulting in a total of $1,900 for the two violations.  This includes consideration of the factors listed above, as well as evidence that, while not mitigating, this was human error,[56] likely a mistake,[57] by a company with no other alleged compliance issues,[58] and caused minimal damage that only required in-house clean-up.[59]

Therefore, pursuant to 14 C.F.R. § 13.205(a)(9), **IT IS HEREBY FOUND:**[60] the Respondent knowingly violated 49 C.F.R. §§ 171.2(e) and 173.24(b)(1).

**AND ORDERED:**

The Respondent shall pay a civil penalty in the amount of $1,900.[61]

DOUGLAS M. RAWALD
Administrative Law Judge

Attachments:
1. Service List
2. Appendix: Complainant's Exhibits

---

[53] *See* FAA Order 2150.3B at C-17, Fig. C-2.

[54] *See also* FAA Order 2150.3B at C-6.

[55] The guidance notes that "[i]n many instances, the answers to most or all of the questions will be no and the only relevant weighting factor in this section will be the risk category of the material identified…" FAA Order 2150.3B at C-5.

[56] *See* Ex. 2 at 3.  Code 515 indicates "Human Error" was the cause of the spill.

[57] *See* Hearing Transcript at 63.

[58] *See* Hearing Transcript at 65.

[59] *See* Ex. 2 at 4.

[60] Pursuant to 14 C.F.R. § 13.233(a), "A party may appeal the administrative law judge's initial decision, and any decision not previously appealed … pursuant to §13.219, by filing a notice of appeal in accordance with § 13.210 no later than 10 days after entry of the oral initial decision on the record or service of the written initial decision on the parties.  The party must serve a copy of the notice of appeal on each party in accordance with § 13.211."

[61] 14.C.F.R. § 13.232(e), governing an order assessing a civil penalty states: "Unless appealed pursuant to §13.233, the initial decision issued by the administrative law judge is considered an order assessing civil penalty if the administrative law judge finds that an alleged violation occurred and determines that a civil penalty, in an amount found appropriate by the administrative law judge, is warranted."

Docket No. FAA-2020-0958                                                    Initial Decision, page 9

ATTACHMENT A
to Decision and Order