No. 23-2376

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

AXALTA COATING SYSTEMS LLC,

*Petitioner*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,
FEDERAL AVIATION ADMINISTRATION,

*Respondent*.

On Petition for Review of an Order of the
Federal Aviation Administration, No. 2023-06

BRIEF *AMICUS CURIAE* OF THE NEW CIVIL LIBERTIES ALLIANCE
IN SUPPORT OF PETITIONER

Kara M. Rollins (NJ Bar No. 107002014)
Litigation Counsel
Sheng Li
Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive,
Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210

*Attorneys for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 and Third Circuit L.A.R. 26.1, the New Civil Liberties Alliance ("NCLA") makes the following disclosures:

(1) For non-governmental corporate parties, please list all parent corporations: NCLA is a nonprofit corporation organized under § 501(c)(3) of the Internal Revenue Code.

NCLA has no parent corporation.

(2) For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock.

NCLA has issued no stock.

(3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests.

NCLA is unaware of any such corporation, apart from those identified by the parties.

(4) In all bankruptcy appeals counsel for the debtor or trustee must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured debtors; and (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

September 5, 2024

*s/ Kara M. Rollins*
Kara M. Rollins

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF CITATIONS ....................................................................................... iii

INTEREST OF AMICUS CURIAE ........................................................................1

STATEMENT OF THE CASE.................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................4

ARGUMENT ...........................................................................................................6

  I.  DOT'S CIVIL-PENALTY PROCEEDING VIOLATED AXALTA'S SEVENTH
      AMENDMENT RIGHT TO TRIAL BY JURY IN A CIVIL CASE ...................................6

    A.  The Seventh Amendment Applies to All Statutory Claims that Are Legal in
        Nature .................................................................................................7

    B.  The Seventh Amendment Applies to DOT's Attempt to Seek Civil
        Penalties...........................................................................................12

    C.  DOT's Statutory Claim Is Analogous to Common-Law Negligence .........15

  II.  DOT'S IN-HOUSE ADJUDICATION VIOLATES ARTICLE III OF THE
      CONSTITUTION...............................................................................................18

  III.  THE NARROW PUBLIC RIGHTS EXCEPTION DOES NOT APPLY ........................21

CONCLUSION......................................................................................................25

COMBINED CERTIFICATIONS.........................................................................26

# TABLE OF CITATIONS

**C**ASES

*Atlas Roofing Co. v. Occupational Safety and Health Rev. Comm'n*,
430 U.S. 442 (1977)........................................................... 6, 23

*Cont. Courier Servs., Inc. v. Rsch. & Special Programs Admin., U.S. Dep't of Transp.*,
924 F.2d 112 (7th Cir. 1991) ............................................16

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)........................................... 12, 23, 24

*In re U.S. Fin. Sec. Litig.*,
609 F.2d 411 (1979)............................................................10

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ............................................7

*Lorenzo v. SEC*,
872 F.3d 578 (D.C. Cir. 2017)............................................3

*McCulloch v. Maryland*,
4 Wheat. 316 (1819) ........................................................11

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
59 U.S. 272 (1855)............................................................22

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)..................................................... 20, 21

*Nat'l Power Corp. v. FAA*,
864 F.3d 529 (7th Cir. 2017) ............................................16

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
524 U.S. 325 (2018)............................................................22

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)..................................................... 7, 10

*Parsons v. Bedford, Breedlove & Robeson*,
28 U.S. 433 (1830)............................................................11

*Reid v. Covert*,
354 U.S. 1 (1957)..................................................................7

*Ruiz v. U.S. Att'y Gen.*,
   73 F.4th 852 (11th Cir. 2023) ...............................................................19

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024)............................................................... Passim

*SEC v. Teo*,
   746 F.3d 90 (3d Cir. 2014) ...................................................................16

*Stern v. Marshall*,
   564 U.S. 462 (2011)......................................................... 19, 20, 22, 23

*Tull v. United States*,
   481 U.S. 412 (1987)................................................................. 12, 13, 15

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend VII ..................................................................... 5, 6, 11

U.S. Const. art. III § 1 ..........................................................................19

## STATUTES

49 U.S.C. § 46301 .................................................................................14

49 U.S.C. § 5123 ....................................................................... 5, 14, 20

Judiciary Act of 1789,
   1 Stat. 73 ..............................................................................................21

## OTHER AUTHORITIES

Charles, W. Wolfram,
   *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639
   (1973) ...................................................................................................10

Declaration of Independence ...................................................................2

Edward P. Cheyney,
   *The Court of Star Chamber*, 18 Am. Hist. Rev. 727 (1913) ..................9

Letter from Thomas Jefferson to Thomas Paine (July 11, 1789),
   *in* The Papers of Thomas Jefferson 267 (Julian P. Boyd ed., 1958) ......8

Oliver Wendell Holmes, Jr.,
   *The Common Law* (1881) .....................................................................16

Roger W. Kirst,
   *Administrative Penalties and the Civil Jury: The Supreme Court's Assault on the
   Seventh Amendment*, 126 U. Pa. L. Rev. 1281 (1978) .........................12

Ryan Patrick Alford.,
  *The Star Chamber and the Regulation of the Legal Profession 1570-1640*, 51
  Am. J. Legal Hist. 639 (2011) ..............................................................................9

The Federalist No. 78,
  (A. Hamilton) (C. Rossiter, ed. 1961) ...............................................................19

The Federalist No. 83,
  (A. Hamilton) (C. Rossiter ed. 1961) ......................................................... 10, 11

The Revolutionary Writings of John Adams
  (C. Bradley Thompson ed., 2000).........................................................................8

William S. McKechnie,
  *Magna Carta: A Commentary on The Great Charter of King John* (2d ed. 1914)
  ........................................................................................................................13

**INTEREST OF AMICUS CURIAE**

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil-rights group devoted to defending constitutional freedoms from violations by the administrative state.[1] The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself, such as jury trial, the right to be tried in front of an impartial and independent judge, and the right to live under laws made by elected lawmakers through constitutionally prescribed channels. Yet these self-same rights are also very contemporary—and in dire need of renewed vindication—because Congress, administrative agencies, and courts have neglected them for so long.

NCLA defends civil liberties—primarily by asserting constitutional constraints on the administrative state in the courts. Although Americans still enjoy the shell of their Republic, there has developed within it a very different sort of government—a type, in fact, that the Constitution was designed to prevent. This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's concern.

---

[1] No counsel for a party authored this brief in whole or in part; and no person or entity, other than NCLA and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief. All parties have consented to the filing of the brief.

The administrative scheme in this case effectively denies individuals the right to be tried by a jury of their peers and equal protection of the laws in civil cases brought the by government. By empowering the government—and the government alone—to decide whether to try someone before an administrative law judge or before a jury, this administrative scheme turns individuals' jury trial rights into mere options, granted only at the government's sufferance. That asymmetry of power is inconsistent with both the Seventh Amendment's promise of a right to a jury trial and the constitutional guarantee of equal protection of the laws. NCLA is also concerned by the relocation of judicial power from courts—in which Article III solely vests such power—to administrative agencies. Congress lacks judicial power whatsoever, so it cannot delegate that power to any other branch of government. Judicial power resides in the courts by the Constitution's very terms.

## STATEMENT OF THE CASE

The Founders cited colonial governors' practice of steering civil enforcement actions away from local courts into specialized tribunals that deprived the accused "of the benefit of trial by jury" and that were decided by judges who were "dependent on [the King] alone for the tenure of their offices, and the amount and payment of their salaries," as a reason for going to war. Declaration of Independence ¶¶ 11, 20. After independence, they established the Constitution to prevent a repeat of this tyranny. Specifically, the Due Process Clause of the Fifth Amendment limits

how the government may deprive a person of life, liberty, or property. The Seventh Amendment guarantees the right to trial by jury in civil enforcement cases where property is at stake. And Article III entitles the accused in such cases to an independent judge. Yet, over two centuries later, the vast majority of civil enforcement actions are resolved in juryless agency proceedings before agency officials instead of independent judges.

Then-judge Kavanaugh keenly recognized this "agency-centric process is in some tension with Article III of the Constitution, the Due Process Clause of the Fifth Amendment, and the Seventh Amendment right to a jury trial in civil cases." *Lorenzo v. SEC*, 872 F.3d 578, 602 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) (citing Philip Hamburger, *Is Administrative Law Unlawful?* 227–57 (2014)). The Supreme Court's recent decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), vindicates his dissenting view and confirms that agency-centric civil-penalty proceedings violate the Seventh Amendment right to trial by jury, and they improperly relocate judicial power vested in Article III courts to executive officials.

The Department of Transportation's ("DOT") civil-penalty proceeding is indistinguishable from the one that the Supreme Court struck down in *Jarkesy*. The Federal Aviation Administration ("FAA"), an agency within DOT, brought a civil-penalty claim against Petitioner Axalta Coating Systems LLC ("Axalta") under a statute that uses common-law terms to define a violation. DOT's statutory claim thus

is akin to a suit at common law that must be brought in an Article III court, where the accused has the Seventh Amendment right to trial by jury. The Court must vacate DOT's civil-penalty order because it was issued by an agency official in a juryless proceeding.

## SUMMARY OF THE ARGUMENT

*Jarkesy* directly resolves this case. In both this case and in *Jarkesy*, a federal agency brought a statutory claim for a civil penalty against an entity or individual it accused of wrongdoing in a juryless, in-house proceeding before an administrative law judge ("ALJ"), instead of in federal court. The Supreme Court made clear that, because statutory claims for civil penalties are legal in nature, they are analogous to "Suits in common law" under the Seventh Amendment, and therefore the right to trial by jury applies.

The only difference between the two cases is that *Jarkesy* involved an accusation of securities fraud, while here DOT accused Axalta of violating the prescribed standards of care for shipping paint by aircraft. *See* FAA Order No. 2023-06, at 1 (June 7, 2023) ("FAA Order"), JA105.[2] That difference is of no moment

---

[2] Specifically, DOT alleges violations of 49 C.F.R. § 171.2(e), which requires the paint at issue to be "properly … packaged … as required by application requirements," and § 173.24(b)(1), which requires the paint can to "be … closed, so that under conditions normally incident to transportation … there will be no identifiable … release of hazardous materials." FAA Order at 1, n.1 & n.2 (quoting 49 C.F.R. §§ 171.2(e), 173.24(b)(1)), JA105.

because, as in *Jarkesy*, "the civil penalties in this case … are a type of remedy at common law that could only be enforced in courts of law. That conclusion effectively decides that this suit implicates the Seventh Amendment right, and that [Axalta] would be entitled to a jury on these claims." 144 S. Ct. at 2130 (cleaned up).

The nature of the statutory claim only strengthens that conclusion. DOT brought its claim under 49 U.S.C. § 5123, which authorizes a civil penalty against anyone who "knowingly violates" the agency's paint-packaging regulations, with knowingly being defined as having "actual knowledge" or where "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." 49 U.S.C. § 5123(a)(1). Section 5123's reliance on "common law terms of art," 144 S. Ct. at 2130, to define the statutory cause of action reinforces the conclusion that DOT's claim is akin to "Suits at common law," and therefore the Seventh Amendment applies. U.S. Const. amend VII.

*Jarkesy* further held that a statute that authorizes an agency to adjudicate claims that are analogous to "Suits at common law" violates Article III, which vests judicial power to decide such claims solely in federal courts. 144 S. Ct. at 2132. DOT's § 5123 claim here against Axalta for not "exercising reasonable care" is "in the nature of an action at common law[,]" and therefore, "adjudication by an Article III court is mandatory." *Id.* (citing *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

Indeed, the dissent in *Jarkesy* specifically identified 49 U.S.C. § 46301—the very provision that DOT invoked to assess civil penalties against Axalta in a juryless in-house administrative proceeding—as a statutory provision that the majority opinion renders invalid. DOT's in-house adjudication is therefore unconstitutional under Article III. *Id.* at 2173–74 (Sotomayor, J., dissenting).

Finally, DOT may not rely on the "public rights" exception to adjudication in Article III courts to justify its in-house adjudication scheme. *Jarkesy* rejected the expansive reading of "public rights" under *Atlas Roofing Co. v. Occupational Safety and Health Rev. Comm'n*, 430 U.S. 442 (1977), for cases sounding in fraud, but openly suggested that *Atlas Roofing* has already been effectively "overruled." 144. S. Ct. at 2137 n.3. The Court confirmed that the "public rights" exception is narrow and does not include "*any* matter which, from its nature, is the subject of a suit at the common law," *id.* at 2134 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855) (emphasis added)), such as DOT's civil-penalty claim here.

## ARGUMENT

### I. DOT's CIVIL-PENALTY PROCEEDING VIOLATED AXALTA'S SEVENTH AMENDMENT RIGHT TO TRIAL BY JURY IN A CIVIL CASE

The Seventh Amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" U.S. Const. amend. VII. The Supreme Court recently confirmed this

right "extends to a particular statutory claim if the claim is 'legal in nature,'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)), and thus "akin to common law claims," *id.* at 2139 (citing *Tull v. United States*, 481 U.S. 412, 421–23 (1987)). DOT's claim in this case is akin to a common law claim because the agency sought a civil penalty—which only courts of law may issue—and the statutory cause of action draws upon common-law terms that sound in negligence to define a violation. The Seventh Amendment right to trial by jury thus applies, so DOT's juryless proceeding is unconstitutional.

## A. The Seventh Amendment Applies to All Statutory Claims that Are Legal in Nature

Trial by jury is a "fundamental" component of our legal system "and remains one of our most vital barriers to governmental arbitrariness." *Reid v. Covert*, 354 U.S. 1, 9–10 (1957). As Blackstone said, "the most transcendent privilege which any subject can enjoy, or wish for, [is] that he cannot be affected, either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." *Id.* (quoting 3 William Blackstone, Commentaries 379).

"The founders of our Nation considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343 (1979) (Rehnquist, J., dissenting). "John Adams called trial by jury (along with popular elections) 'the heart and lungs of liberty.'" *Jarkesy v. SEC*, 34 F.4th 446, 451 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024) (quoting The

Revolutionary Writings of John Adams 55 (C. Bradley Thompson ed., 2000)), while "Thomas Jefferson identified the jury 'as the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution,'" *id.* (quoting Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), *in* The Papers of Thomas Jefferson 267 (Julian P. Boyd ed., 1958)).

DOT held that the right to trial by jury did not apply to its civil-penalty case against Axalta for "shipp[ing] an improperly packaged can of paint on board an aircraft." FAA Order at 1, JA105. It concluded that there is no "analogous, eighteenth-century cause of action" to this claim because "Blackstone, Thomas Jefferson, and John Adams would have no familiarity with the classification, packaging and transportation [by aircraft] of the corrosive and toxic chemicals developed in the twentieth and twenty-first centuries." *Id*. at 5, JA109 (footnote omitted). That analytical framework is wrong because the right to trial by jury is not limited to subject matters that existed in the Eighteenth Century. Rather "[t]he Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature,'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera*, 492 U.S. at 53), "whatever may be the peculiar form which [the claim] may assume," *id.* (quoting *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830) (Story, J.)).

DOT's requirement for a precise subject-matter analogue would reduce the Seventh Amendment to a nullity with respect to all modern technological, economic,

or social topics. The federal government could, for example, deny the accused the right to a trial by jury in civil wire fraud cases. After all, "Blackstone, Thomas Jefferson, and John Adams would have no [more] familiarity" with telecommunication devices than with the transportation of chemicals by aircraft. *See* FAA Order at 5, JA109.

While unfamiliar with aircraft transportation, the Founders would have been extremely familiar with DOT's in-house civil-penalty adjudications because they fought a war to escape such tyranny and established the Constitution to prevent its recurrence. Ever since the Anglo-American insistence upon jury trials and due process has existed, the government has tried to circumvent the protections that juries provide citizens. An early example was "[t]he Court of Star Chamber …, [which] dispens[ed] the royal grace in a technically arbitrary, but also speedy, manner [in cases that] … involved issues in which the King might have a particular interest." Ryan Patrick Alford, *The Star Chamber and the Regulation of the Legal Profession 1570-1640*, 51 Am. J. Legal Hist. 639, 645 (2011). Such proceedings quickly deteriorated into abuse of individual rights. *See, e.g.*, Edward P. Cheyney, *The Court of Star Chamber*, 18 Am. Hist. Rev. 727, 740-41 (1913).

By the time of the American Revolution, the abuses of juryless civil tribunals were not only well known but provided cause for war. "Colonial administrators routinely steered [civil] enforcement actions out of local courts and into [juryless]

vice-admiralty tribunals where they thought they would win more often." *Jarkesy*, 144 S. Ct. at 2142 (Gorsuch, J., concurring). *See also In re U.S. Fin. Sec. Litig.*, 609 F.2d 411, 420 (9th Cir. 1979) ("Colonial administrators had been circumventing the right [to a jury] by trying various cases, both criminal and civil, in the vice-admiralty courts."). The Founders cited this practice of "evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts … as a justification for severing our ties to England." *Jarkesy*, 144 S. Ct. at 2128 (citing Declaration of Independence ¶ 20).

After the Revolution, *every* new State's constitution guaranteed a right to civil juries. Charles, W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 655 (1973); *see also*, *Parklane Hosiery*, 439 U.S. at 341) ("[A]ll of the 13 newly formed States restored the institution of civil jury trial to its prior prominence."). Yet, the initial draft of the U.S. Constitution intentionally omitted the right to civil juries so that "the legislature would be at liberty either to adopt that institution or to let it alone." The Federalist No. 83, p. 496 (C. Rossiter ed. 1961) (A. Hamilton). In other words, Hamilton wanted to give Congress the power to set up juryless regulatory adjudication schemes like the one at issue in this case. But his view did not prevail.

Indeed, "[o]ne of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the

right of trial by jury in civil cases." *Parsons*, 28 U.S. at 446. *See also* The Federalist No. 83, *supra* at 495 ("The objection to the plan of the convention, which has met with most success … [was] the want of a constitutional provision for the trial by jury in civil cases."). Anti-Federalists, who understood that juries provided a bulwark against structural biases of government-employed adjudicators, ultimately convinced the Convention that the omission of the right to trial by jury in civil cases was mistaken, and "[t]he Framers promptly adopted the Seventh Amendment to fix that flaw." *Jarkesy*, 144 S. Ct. at 2128.

The Amendment guarantees the right of trial by jury in "Suits at common law." U.S. Const. amend. VII. Because the Constitution was designed to "endure for ages to come," *McCulloch v. Maryland*, 4 Wheat. 316, 415 (1819), this did not mean only those "suits, which the common law recognized among its old and settled proceedings," *Parsons*, 28 U.S. at 447. Rather, "the Framers used the term 'common law' in the Amendment 'in contradistinction to equity, and admiralty, and maritime jurisprudence.'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Parsons*, 28 U.S. at 446). The Supreme Court has thus interpreted the Seventh Amendment to "embrace *all* [civil] suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.* (quoting *Parsons*, 28 U.S. at 447) (emphasis added). The Amendment "ensure[s] that any future Congresses would be … powerless … to create new rights and remedies by statute and commit their

enforcement … to a tribunal other than a court of law … in which facts are not found by juries." Roger W. Kirst, *Administrative Penalties and the Civil Jury: The Supreme Court's Assault on the Seventh Amendment*, 126 U. Pa. L. Rev. 1281, 1339 (1978).

The right to a trial by jury applies in any civil case that is "legal in nature." *Granfinanciera*, 492 U.S. at 55. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing … jurisdiction in an administrative agency[.]" *Id.* at 61. "[T]o hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee by assigning to administrative agencies … causes of action not grounded in state law[.]" *Id.* at 52. The Seventh Amendment right to a jury trial thus applies to statutory causes of actions "that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century[.]" *Id.* at 42.

## B. The Seventh Amendment Applies to DOT's Attempt to Seek Civil Penalties

In determining whether a statutory action is analogous to a common-law suit and thus implicates the Seventh Amendment, the nature of the remedy is the most important inquiry. *Tull*, 481 U.S. at 417; *Granfinanciera*, 492 U.S. at 42. Indeed, where an agency seeks civil penalties, "the remedy is all but dispositive." *Jarkesy*, 144 S. Ct. at 2129. That is because civil penalties are "designed to punish or deter

the wrongdoer," and "only courts of law issued monetary penalties to 'punish culpable individuals.'" *Id.* (quoting *Tull*, 481 U.S. at 422).

Since Magna Carta, monetary penalties had to be "fixed, not arbitrarily by the Crown," but rather by "honest men of the neighbourhood" (*i.e.*, a jury) following judicial proceedings. William S. McKechnie, *Magna Carta: A Commentary on The Great Charter of King John*, 287–88 (2d ed. 1914). "Prior to the enactment of the Seventh Amendment, English courts had held that a civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." *Tull*, 481 U.S. at 418. "After the adoption of the Seventh Amendment, federal courts followed this English common law in treating the civil penalty suit as a particular type of an action in debt, requiring a jury trial." *Id.*

In *Jarkesy*, the Court held that the Securities and Exchange Commission's ("SEC") use of in-house proceedings to levy civil penalties violates the Seventh Amendment. 144 S. Ct. at 2130. Before considering the nature of SEC's cause of action, the Court analyzed the nature of the remedy sought, concluding that "the civil penalties [the agency sought] are designed to punish and deter, not to compensate" and "are therefore 'a type of remedy at common law that could only be enforced in courts of law.'" *Id.* at 2130 (citing *Tull*, 481 U.S. at 422). "That conclusion [regarding remedies] effectively decides that [the agency's] suit implicates the

Seventh Amendment right, and that a defendant would be entitled to a jury on these claims." *Id.*

The same is true here because there is no dispute that DOT brought a statutory claim to impose a civil penalty against Axalta. DOT conducted a juryless proceeding enforcing a provision literally labelled "Civil penalty," which authorizes DOT to seek "a civil penalty of not more than $75,000" per knowing violation of hazard-materials regulations. 49 U.S.C. § 5123, cited at FAA Order at 5, JA108. Such penalties involving hazardous materials violations are governed under 49 U.S.C. § 46301, which requires DOT to determine the amount of the civil penalty based on "the nature, circumstances, extent, and gravity of the violation, … the degree of culpability, any history of prior violations, the ability to pay, and any effect on the ability to continue doing business," and "other matters that justice requires." Initial FAA Decision at 6, JA134 (quoting 49 U.S.C. § 46301(e)). Like the SEC statute in *Jarkesy*, § 46301(e) lists factors that "concern culpability, deterrence, and recidivism" and therefore demonstrate DOT's "civil penalties are designed to be punitive." *See Jarkesy*, 144 S. Ct. at 2129–30. "The final proof that this remedy is punitive is that [DOT] is not obligated to return any money to victims." *Id.* at 2130.

On the "all but dispositive" question of remedy, there is no daylight between the civil penalty that DOT imposed on Axalta under §§ 5123 and 46301 and SEC's civil penalty in *Jarkesy*, 144 S. Ct. at 2129. Both are common-law legal remedies

that must be sought in courts of law. This conclusion "effectively decides that this [DOT action] implicates the Seventh Amendment right, and that [Axalta] would be entitled to a jury on [DOT's] claims." *Id.* at 2130. Even the dissent in *Jarkesy* recognized that the majority opinion would prevent DOT from being able to "impose civil penalties in [juryless] administrative proceedings" under "§ 46301." 144 S. Ct. at 2173–74 (Sotomayor, J., dissenting).

### C. DOT's Statutory Claim Is Analogous to Common-Law Negligence

While the punitive nature of DOT's remedy already establishes Axalta's right to trial by jury, that conclusion is strengthened by the nature of the statutory claim, which is a relevant but less important consideration. *See Tull*, 481 U.S. at 421 ("the relief sought is more important than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial.") (cleaned up). In determining whether a statutory claim is analogous to a suit at common law for Seventh Amendment purposes, there need not be a precise, element-by-element, eighteenth-century common-law analogue to the statutory cause of action. *Id.* at 421. In *Tull*, for instance, the Court held that a civil-penalty action for violating the Clean Water Act was sufficiently analogous to a common-law action in debt and a public nuisance action. *Id.* at 422.

Here, DOT's statutory claim under 49 U.S.C. § 5123(a) against Axalta rests upon a theory of negligence. The statute requires the agency to prove a "person has

actual knowledge of the facts giving rise to the [regulatory] violation" or that "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." *Nat'l Power Corp. v. FAA*, 864 F.3d 529, 533 (7th Cir. 2017) (quoting § 5123(a)(1)) (internal quotation marks omitted); *See also Cont. Courier Servs., Inc. v. Rsch. & Special Programs Admin., U.S. Dep't of Transp.*, 924 F.2d 112, 114 (7th Cir. 1991) (holding that § 5123(a)(1) requires DOT to prove that "failure to acquire [requisite] knowledge was negligent"). Section 5123(a) borrows "reasonable person" and "reasonable care" from common-law negligence, which asks whether the accused "use[d] such care as a prudent man would do under the circumstances," Oliver Wendell Holmes, Jr., *The Common Law* 111 (1881).

To be sure, a § 5123(a) claim does not share every element with common-law negligence because DOT need not prove that the alleged failure to exercise reasonable care caused an injury—the paint can at issue in this case injured no one. But the same common-law causation and injury elements are also missing from statutory securities fraud. *SEC v. Teo*, 746 F.3d 90, 102 (3d Cir. 2014) ("[The Commission need not prove reliance, nor must it show that any investor lost money as a result of the violation."). The lack of causation and injury elements, however, did not prevent *Jarkesy* from holding that a claim of statutory securities fraud was analogous to common-law fraud for Seventh Amendment purposes. What mattered was that "[b]oth target the same basic conduct: misrepresentation or concealment of

16

material facts." 144. S. Ct. at 2130. "Congress deliberately used 'fraud' and other common law terms of art" in defining statutory securities fraud, and that "decision to draw upon common law fraud created an enduring link between federal securities fraud and its common law 'ancestor.'" *Id.* (quoting *Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007)).

The same reasoning applies to DOT's § 5123(a) claim here. Both § 5123(a) and common-law negligence target the same basic conduct: failure to exercise reasonable care under the circumstances. Here, regulatory provisions at issue required Axalta to package the can of paint in a manner that prevents leakage during air transport. FAA Order at 1, JA105. To be subject to a civil penalty, Axalta must have known that its packaging method was deficient or "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." 49 U.S.C. § 5123(a).[3] Congress deliberately used common-law terms of art, including "reasonable person" and "reasonable care" standards, to define a § 5123(a) claim. "[W]hen Congress transplants a common-law term, the old soil comes with it." *Jarkesy*, 144 S. Ct. at 2130 (quoting *United States v. Hanson*, 599 U.S. 762, 778

---

[3] The FAA issued a civil penalty because "Axalta knew, or in the exercise of reasonable care would have known, the shipment contained paint," FAA Order at 13-14, JA117-18, without requiring Axalta to have actual or constructive knowledge that its packaging method was inadequate to prevent leakage during air transport. Such blatant disregard of the statutory scienter requirement underscores the inherent bias that occurs when agency officials adjudicate agency cases.

(2023)) (alteration in original) (internal quotation marks omitted). Reliance on common-law terms creates an enduring link between § 5123(a) and the common-law cause of action for failing to exercise reasonable care, further confirming that DOT's claim is "legal in nature," and thus subject to the Seventh Amendment's guarantee of the right to trial by jury. *Id.* at 2131 (quoting *Granfinanciera*, 492 U.S. at 53) (internal quotation marks omitted).

Axalta has a constitutional right to a jury trial to determine its liability. But the agency's adjudication structure permits no pathway to a jury. Rather, the agency makes factual findings, which are entitled to deferential review by circuit courts. Such an arrangement circumvents the Seventh Amendment's mandate that: "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." Constitutional protection of jury fact-finding into, for example, an accused's state of mind, is rendered meaningless if a single agency adjudicator replaces a jury. Because DOT's adjudicatory scheme denies Axalta its constitutional right to a jury trial, it plainly violates the Seventh Amendment. The underlying in-house proceeding was therefore unconstitutional, and DOT's civil penalty order must be vacated.

## II. DOT'S IN-HOUSE ADJUDICATION VIOLATES ARTICLE III OF THE CONSTITUTION

In addition to the Seventh Amendment, DOT's use of executive officers—an ALJ and FAA's Acting Administrator—to adjudicate the claim against Axalta also

violates Article III of the Constitution, which establishes an independent judiciary as a "guardian of individual liberty and separation of powers." *Stern v. Marshall*, 564 U.S. 462, 495 (2011). "The judicial Power of the United States" is "vested" in the federal courts, and it secures tenure and salary protection for the judges of those courts, among other protections. U.S. Const. art. III § 1. These protections ensure the independence of the federal courts from the political branches, for "there is no liberty if the power of judging be not separated from the legislative and executive powers." The Federalist No. 78, at p. 466. (A. Hamilton) (C. Rossiter, ed. 1961) (quoting 1 Montesquieu, *The Spirit of the Laws* 181).

The Supreme Court clarified over 200 years ago that "Congress couldn't imbue executive officers with judicial authority." *Ruiz v. U.S. Att'y Gen.*, 73 F.4th 852, 864 (11th Cir. 2023) (Newsom, J., concurring) (citing *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 410 (1792)). More recently, it explained that "[u]nder 'the basic concept of separation of powers ... that flow[s] from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States' cannot be shared with the other branches." *Jarkesy*, 144 S. Ct. at 2131 (quoting *Stern*, 564 U.S. at 483) (internal quotation marks omitted). The Court thus reaffirmed that "matters concerning private rights may not be removed from Article III courts." *Id.* at 2132.

Here, the Acting FAA Administrator who issued the civil-penalty order against Axalta is an executive officer who may not exercise "the essential attributes of judicial power [that] are reserved to Article III courts." *Stern*, 564 U.S. at 501 (quoting *CFTC v. Schor*, 478 U.S. 833, 851 (2011)) (alteration in original) (internal quotation marks omitted); *see also N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 62 (1982). "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Jarkesy*, 144 S. Ct. at 2132 (citing *Stern*, 564 U.S. at 484). This analysis proceeds in the same manner as the Seventh Amendment issue. *See supra.*

To start, DOT essentially brought a negligence claim that alleges Axalta was not "exercising reasonable care" in packaging a can of paint for shipment. 49 U.S.C. § 5123(a)(1)(B). Because that claim "target[s] the same basic conduct as common law [negligence], employ[s] the same terms of art, and operate[s] pursuant to similar legal principles," 144 S. Ct. at 2136, it squarely falls within traditional suits at common law brought in English courts of law and impacts Axalta's private rights.

More importantly, § 5123(a) "provide[s] civil penalties, a punitive remedy that [courts] have recognized 'could only be enforced in courts of law.'" *Id.* (quoting *Tull*, 481 U.S. at 422). A statutory action by the government to recover monetary penalties deprives a person of vested property rights and thus requires a *judicial*

20

determination. The 1789 Judiciary Act, for instance, provided that the Article III courts would have "exclusive original cognizance … of all suits for penalties and forfeitures incurred, under the laws of the United States." Judiciary Act of 1789, 1 Stat. 73, 77 § 9. The civil-penalty claim DOT brought against Axalta is therefore "inherently … judicial." *N. Pipeline*, 458 U.S. at 68–70 (citing *Ex Parte Bakelite Corp.*, 279 U.S. 438, 458 (1929)). Determining liability—and the civil penalty amount—requires exercise of judicial power to adjudicate private property rights. Such power is forbidden to executive officers such as the ALJ and the Acting FAA Administrator. Rather, DOT's civil-penalty claim must be brought in an Article III court.

## III. THE NARROW PUBLIC RIGHTS EXCEPTION DOES NOT APPLY

DOT mistakenly relied on the "public rights" exception to justify its juryless civil-penalty adjudication outside of Article III courts. FAA Order at 4–5, JA108–09. This narrow exception does not apply to "traditional legal claims" like DOT's civil penalty for Axalta's alleged failure to exercise reasonable care. *Jarkesy*, 144 S. Ct. at 2136, 2137 (citing *Granfinanciera*, 492 U.S. at 52).

The "public rights" exception "has no textual basis in the Constitution" and instead relies on "background legal principles" to allow Congress to assign certain matters to an agency without a jury. *Jarkesy*, 144. S. Ct. at 2134. It is a narrow exception limited to only matters that "could have been determined exclusively by

[the executive and legislative] branches," *Stern*, 564 U.S. at 493 (quoting *N. Pipeline*, 458 U.S. at 68), and therefore "from their nature do not require judicial determination." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 524 U.S. 325, 334 (2018) (citation omitted).

For instance, because the government has absolute discretion regarding its own funds, it could rely on a juryless "summary proceeding" to compel customs officers to "pay such balances of the public money" into the Treasury "as may be in their hands." *Murray's Lessee*, 59 U.S. at 281, 285. The Court has also recognized the "public rights" exception in matters concerning immigration, public benefits, and patents, *Jarkesy*, 144 S. Ct. at 2132–33 (collecting cases), *i.e.*, disposition of government property or otherwise falling within the government's exclusive discretion. While the Court has not "definitively explained" the precise bounds of public rights, it made clear that the exception is narrow and does not apply to "any matter which, from its nature, is the subject of a suit at the common law." *Jarkesy*, 144 S. Ct. at 2133–34 (quoting *Murray's Lessee*, 59 U.S. at 284) (internal quotation marks omitted) (citation for first quotation omitted). As explained above, both the relief sought—a civil penalty—and the nature of the claim—failure to exercise reasonable care—mark DOT's enforcement action as the subject of a suit at common law.

"[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* at 2134 (quoting *N. Pipeline*, 458 U.S. at 69 n. 23 (plurality opinion)) (internal quotation marks omitted). That means it is not incumbent upon Axalta to identify a common-law analogue for DOT's enforcement action—though it can easily meet that burden. *See supra* Section I. Rather, DOT bears the burden of rebutting the presumption in favor of Article III courts by establishing that its enforcement action falls within the narrow "public rights" exemption. It cannot do so because its claim against Axalta has nothing to do with public funds, public benefits, nor any other matter that could be "determined exclusively" by an executive official. *Stern*, 564 U.S. at 493. The "public rights" exception does not apply because this case concerns private rights, namely Axalta's private property that DOT seeks to claim as a civil penalty.

*Atlas Roofing*, 430 U.S. 442, does not compel a contrary conclusion. That case represents the "public rights" exception's highwater mark and upheld juryless administrative proceedings for violations of the Occupational Safety and Health ("OSH") Act. 430 U.S. at 443. The Court has since retreated from that position starting with *Granfinanciera*, which held that "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity." 492 U.S. at 61. *Atlas Roofing*'s own author

acknowledged that "[p]erhaps … *Atlas Roofing* is no longer good law" because *Granfinanciera* "can be read as overruling or severely limiting" it. *Id.* at 79, 71 n.1 (White, J., dissenting).

In *Tull*, 481 U.S. at 522–23, the Court further held that a party has a right to a jury trial whenever the government seeks to impose a statutory civil penalty. Most recently, *Jarkesy* explained "*Atlas Roofing* represents a departure from our legal traditions," 144 S. Ct. at 2138 n.4, and *Jarkesy* correctly rejected the overbroad reading of that case to extend public rights to "new statutory obligations" that "impose[] civil penalties for their violation." *Id.* at 2136 (citation omitted).

While *Jarkesy* did not acknowledge formally overruling *Atlas Roofing*, it certainly "leaves open the possibility that [case has already been] overruled." *Id.* at 2168 n.8 (Sotomayor, J., dissenting). At best, *Atlas Roofing* has been cabined to its facts: "self-consciously novel" statutory causes of action that do not "reiterate common law terms of art" and "instead resemble a detailed building code." *Id.* at 2137. By contrast, § 5123(a) authorizes a civil penalty for a person who "knowingly violates" a regulation, which is defined as either acting with "actual knowledge" or where "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." This cause of action reiterates numerous common law terms of art and therefore does not fall into the public rights exemption under *Altas Roofing*, even assuming that case is still good law.

**CONCLUSION**

For the foregoing reasons, the Court should vacate DOT's Final Order.


September 5, 2024

                                      Respectfully submitted,

                                       *s/ Kara M. Rollins*
                                       Kara M. Rollins (NJ Bar No. 107002014)
                                       Litigation Counsel
                                       Sheng Li
                                       Litigation Counsel
                                       NEW CIVIL LIBERTIES ALLIANCE
                                       4250 N. Fairfax Drive,
                                       Suite 300
                                       Arlington, VA 22203
                                       Telephone: (202) 869-5210

                                       *Attorneys for Amicus Curiae*

## COMBINED CERTIFICATIONS

I, Kara Rollins, certify as follows:

All attorneys except Sheng Li listed in the signature block are members in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief is in 14-point, proportionately spaced Times New Roman type. According to the word processing system used to prepare this brief (Microsoft Word for Microsoft 365), the word count of the brief is 5,944, not including the Rule 26.1 disclosure statement, table of contents, table of citations, signature block, and these combined certifications.

The electronic version of this brief was scanned with SentinelOne. It contains no known viruses.

Paper copies of this brief will be identical to the electronic version.

On this 5th day of September, 2024, I electronically filed the *amicus* brief of NCLA with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Furthermore, on this 5th day of September, 2024, I caused 10 copies of the foregoing brief to be mailed to the Clerk of this Court for arrival within five days. I certify that all participants in the case are registered CM/CF users and that service will be accomplished by the appellate CM/ECF system Respectfully submitted, on September 5, 2024,

_s/ Kara M. Rollins_
Kara M. Rollins