

**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

Tel: (202) 514-5432

February 10, 2025

**By CM/ECF**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106

      Re:    *Axalta Coating Systems LLC v. FAA,* No. 23-2376 (argument
            scheduled for Feb. 20, 2025).

     We file this letter under Federal Rule of Appellate Procedure 28(j) to
alert the panel of this Court's decision in *NLRB v. Starbucks Corp.*, 125
F.4th 78 (3d Cir. Dec. 27, 2024).

     The *Starbucks* petitioner—like petitioner here—raised constitutional
challenges to the agency's adjudication. *Starbucks*, 125 F.4th at 86-88.
The Court held that one of those challenges was not properly before the
Court, because a "statutory exhaustion bar" required the petitioner to first
raise the claim before the agency. *Id.* at 88. Because the petitioner "could
have raised its challenge before the Board but chose not to do so," the Court
declined to consider it. *Id.* at 87.

     *Starbucks* additionally held that the petitioner was not entitled to
relief on its constitutional challenge to the administrative law judge's
removal restrictions. *Id.* at 88-89. That was because the petitioner "could
not show any harm from the alleged constitutional violation" other than
"simpl[e] speculation" that the outcome might have been different if the
ALJ were removable at will. *Id.* at 88.

*Starbucks* thus confirms, as we explained, that Axalta has not properly preserved its constitutional challenges that it did not raise before the agency.  Answering Br. 33-35 & n.6.  And because Axalta fails to demonstrate any prejudice caused by the ALJ's removal restriction, that removal challenge provides no basis to vacate the adjudication here. Answering Br. 48-49.

*Starbucks* commented, in a footnote, that a petitioner preserves an Article III challenge if it properly raises a Seventh Amendment challenge. *Starbucks*, 125 F.4th at 95 n.5.  That statement, however, was not a holding of the Court, as *Starbucks* did not resolve petitioners' Seventh Amendment or Article III challenges on the merits, and instead held that the agency lacked statutory authority to take the contested action.  *Id.* at 96-97. Generally, courts require litigants to raise and preserve individual claims even if they might overlap in substance.  *Cf. COPE v. Kansas State Board of Education*, 821 F.3d 1215, 1219 n.4 (10th Cir. 2016) (holding that plaintiff had failed to preserve "Free Exercise, Free Speech, and Fourteenth Amendment claims," but considering plaintiff's preserved Establishment Clause claim).

Sincerely,

*/s/ Daniel Aguilar*
Daniel Aguilar
U.S. Department of Justice
Civil Division, Appellate Staff

# CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this letter contains 350 words according to the count of Microsoft Office 365, and that this is within the word limit provided by Fed. R. App. P. 28(j).

I certify that on February 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 */s/ Daniel Aguilar*
DANIEL AGUILAR

125 F.4th 78
United States Court of Appeals, Third Circuit.

NATIONAL LABOR RELATIONS
BOARD, Petitioner in No. 23-1953
v.
STARBUCKS CORPORATION,
d/b/a Starbucks Coffee Company
Starbucks Corporation, d/b/a Starbucks
Coffee Company, Petitioner in No. 23-2241
v.
National Labor Relations Board

No. 23-1953, No. 23-2241
|
Argued on September 18, 2024
|
(Opinion filed: December 27, 2024)

**Synopsis**
**Background:** National Labor Relations Board
(NLRB) petitioned to enforce its order,
determining that employer engaged in unfair
labor practice in violation of National Labor
Relations Act (NLRA) by reducing one
employee's hours and then firing her and
another employee because of their involvement
in union-organizing activities, rather than
because they violated company policies
and performed poorly at work. Employer
cross-petitioned challenging constitutionality
of ALJ's layered removal protections and
challenging NLRB's conclusions, evidentiary
rulings, and remedy.

**Holdings:** The Court of Appeals, Ambro,
Circuit Judge, held that:

constitutional challenge to ALJ removal
protections was not reviewable;

substantial evidence supported conclusion that
employer's termination of one employee was
unfair labor practice;

substantial evidence supported conclusion that
employer's termination of second employee
was unfair labor practice;

substantial evidence supported conclusion that
employer's reduction of employee's work hours
was unfair labor practice;

employer could not rely on alleged after-
acquired evidence to avoid reinstatement and
limit backpay; but

portion of remedy compensating employees for
direct or foreseeable pecuniary harms exceeded
NLRB's statutory authority.

Petition granted in part; cross-petition denied;
order vacated in part and remanded.

**Procedural Posture(s):** Review of
Administrative Decision.

**\*82** On Application for Enforcement and
Cross-Petition for Review of a Decision
and Order of the National Labor Relations
Board (NLRB Case Nos. 04-CA-252338, 04-
CA-256390, 04-CA-256401,04-CA-258416,
04-CA-256398, 04-CA-256399, and 04-
CA-257024)

**Attorneys and Law Firms**

Ruth E. Burdick, Kira Dellinger Vol, Eric Weitz (Argued), National Labor Relations Board, Appellate and Supreme Court Litigation Branch, 1015 Half Street SE, Washington, DC 20570, Counsel for Petitioner National Labor Relations Board

Maurice Baskin, Emily Carapella, Littler Mendelson, PC, 815 Connecticut Avenue NW, Suite 400, Washington, DC 20006, Lisa S. Blatt, Joshua A. Hanley, Sarah M. Harris (Argued), Edward L. Pickup, Aaron Z. Roper, Williams & Connolly LLP, 680 Maine Avenue SW, Washington, DC 20024, Counsel for Cross-Petitioner Starbucks Corp. d/b/a Starbucks Coffee Co.

Michael E. Kenneally (Argued), Philip A. Miscimarra, Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue NW, Washington, DC 20004, Counsel for Amici Curiae Chamber of Commerce of the United States of America, Coalition for a Democratic Workplace, National Federation of Independent Small Business Legal Center, Inc., and National Retail Federation

Stephanie A. Maloney, Jordan L. Von Bokern, U.S. Chamber Litigation Center, 1615 H Street NW, Washington, DC 20062, Counsel for Amicus Curiae Chamber of Commerce of the United States of America

Before: JORDAN, McKEE, and AMBRO, Circuit Judges

OPINION OF THE COURT

AMBRO, Circuit Judge

**\*83** Starbucks Corporation terminated two employees, baristas Echo Nowakowska and Tristan Bussiere, after they engaged in labor organizing. Starbucks claimed they were terminated for violating company policies and performing poorly at work. But the National Labor Relations Board determined that Starbucks fired them because of their involvement in organizing, and thus violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (NLRA). 29 U.S.C. § 158(a)(1), (a)(3).

The Board petitions for enforcement of its order. Starbucks cross-petitions for review of four issues: (1) whether the Board's administrative law judges (ALJs) are unconstitutionally insulated from presidential removal; (2) whether substantial evidence supports the Board's conclusion that Starbucks committed unfair labor practices by firing Nowakowska and Bussiere and cutting Nowakowska's hours; (3) whether purportedly after-acquired evidence—that Nowakowska and Bussiere recorded other employees and customers without their consent—would have independently justified their terminations, thus precluding their reinstatement and limiting their backpay under the NLRA; and (4) whether the NLRA and the U.S. Constitution authorize the remedy the Board ordered pursuant to *Thryv, Inc.*, 372 N.L.R.B. No. 22, 2022 WL 17974951 (Dec. 13, 2022) (subsequent history omitted), which includes compensation to the employees for direct or foreseeable pecuniary harms.

We hold that: (1) we lack jurisdiction to consider Starbucks' constitutional challenge to layered ALJ removal protections, and, in any event, Starbucks fails to demonstrate injury stemming from the protections; (2) substantial evidence supports the Board's unfair-labor-practice conclusions with respect to Nowakowska's termination and reduction in hours along with Bussiere's termination; and (3) substantial evidence supports the finding that Starbucks knew about the recording activity prior to the terminations, so it cannot rely on that activity to avoid reinstatement and limit backpay. We therefore grant the Board's petition for enforcement and deny Starbucks' cross-petition for review as to the constitutionality of the ALJ's removal protections, whether substantial evidence supported **\*84** the Board's conclusions, and its ruling on the after-acquired evidence. But we vacate the portion of the Board's order that requires Starbucks to "compensate Bussiere and Nowakowska for any direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them, including reasonable search-for-work and interim employment expenses, if any, regardless of whether these expenses exceed interim earnings." App. 7 n.3. That portion exceeds the Board's authority under the NLRA. We remand for further proceedings consistent with this opinion.

# I. BACKGROUND

Between 2018 and 2020, Echo Nowakowska and Tristan Bussiere worked as baristas at Starbucks store locations in Philadelphia. In 2019, they began to work at the store located at Broad and Washington Streets. Around June of 2019, Nowakowska and Bussiere began to talk with coworkers regarding problems with the store's manager at the time, Erin Graves, as well as complaints about their working conditions. In July, Nowakowska and Bussiere coordinated an in-store demonstration, in which they and other current or former employees entered the store to deliver a demand letter to Graves. After the demonstration, Nowakowska and Bussiere continued to air their concerns, attend meetings with Starbucks executives and employees, and engage in other union organizing activities. Emails exchanged between managers expressed concern with the situation and the growing demands of the employees.

In September 2019, Starbucks hired David Vaughan, Jr., as the new store manager at Broad & Washington. On October 29, Nowakowska received a written warning from Vaughan and District Manager Brian Dragone. It stemmed from Vaughan's observation that Nowakowska slammed a drink down in front of a customer and failed to call out the customer's name properly, after which Vaughan had to apologize to the customer. The warning also stated that management needed to coach Nowakowska multiple times to connect appropriately with customers and not to slam drinks on the counter. Dragone sent Partner Resource Manager Gerald Henderson an email stating that Nowakowska and Bussiere were complaining to other employees about Vaughan. He also noted the October 29 warning to Nowakowska as well as a written warning to Bussiere for tardiness.

Dragone's email also summarized a reduction in scheduled hours at the Broad & Washington location. In November, Nowakowska talked to Vaughan about the reduction. He explained it was in response to Nowakowska's poor workplace performance and "causing a disruption." App. 240. During that conversation, Vaughan specifically referred to the October 29 written warning.

On November 21, Dragone, Vaughan, and Partner Resource Manager Michael Rose issued Bussiere a written warning. It stated that he failed to wear his hat and apron on multiple occasions, left the front counter multiple times during his shift, and failed to stock the pastry case on multiple occasions.

The Philadelphia Baristas United union filed an unfair-labor-practice charge against Starbucks on November 25. Nowakowska and Bussiere led other workers and supporters into the Broad & Washington store to hand Dragone a copy. They later filed their own charges in 2020.

In January 2020, Vaughan sent Dragone an email that said in part:

> [Bussiere] & [Nowakowska] think they can do what ever they want & just **\*85** threaten to call NLRB if anybody says anything to them[.] I'm more than willing to deal with the backlash that would come with terminating the two of them because it doesn't matter if we terminate now or 1 year from now[;] they will still call NLRB & spew vicious lies just like they do now while we pay them & give them benefits[.] [T]hese two people obviously hate the brand and do everything they can to tarnish the name STARBUCKS.

App. 819.

Later in January, Dragone and Vaughan notified Nowakowska of her termination. In a written notice, they explained that she had treated customers in a hostile manner earlier that month. Barista Cora Siburt had accused her of responding poorly to a customer's request for a particular amount of ice, including by asking the customer if she would like to make her drink herself. [1] A second incident involved a customer asking for free tea bags as part of a promotional campaign. The customer had purchased a holiday mug that came with free tea for the month of January. When Nowakowska took the mug, the customer said he had coffee in the mug already and wanted the tea bags on their own. Nowakowska replied that the promotion required using the mug, though shift supervisor Leanne Bissell told her to do what the customer asked. As Nowakowska was doing so, the customer also asked for free butter, though he had not ordered food, and she retorted, "Now you want free butter?". App. 25. Nowakowska acknowledged later that the statement was not good customer service. The discharge notice also referred to the drink slamming incident in October discussed above.

1        The ALJ did not credit Siburt's story because her demeanor was guarded while testifying and there were discrepancies in her testimony.

Nowakowska told Bussiere in early February about a rumor that another barista at Broad & Washington, Simon Allen, would be terminated. Bussiere shared the rumor with Allen, who later confronted Siburt, the supposed source of the rumor, telling her what he had heard from Bussiere. Siburt then told Vaughan and Dragone about the conversation. Also informed was Marcus Eckensberger, Regional Director of Operations, and he concluded that knowingly spreading this false rumor, as he said Bussiere had done, warranted termination. That followed on February 26. According to his notice of separation, Bussiere was fired for "[k]nowingly communicating false information" to Allen, which was "disruptive to operations." App. 1456. It also referred to Bussiere's prior discipline for "disrupting operations" and coworkers. *Id.*

In August 2020, the Board issued a consolidated complaint against Starbucks, based on the aforementioned unfair-labor-practice charges, for alleged violations of Sections 8(a)(1) and 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(1), (a)(3). Most relevant to this appeal, the Board alleged that Starbucks committed unfair labor practices by reducing Nowakowska's hours and by firing her and Bussiere in response to protected labor organizing activities. In June 2021, the ALJ who heard the case concluded that these actions indeed violated the NLRA. He ordered the company to offer reinstatement to Nowakowska and Bussiere and to make them whole for any loss of earnings and

benefits. He also ordered it to compensate them for search-for-work and interim employment expenses and to make Nowakowska whole for her unlawful reduction in hours.

Starbucks filed exceptions to the ALJ's decision, and a three-member panel of the Board heard the case. It adopted the **\*86** ALJ's findings and conclusions in February 2023. In addition to the remedies ordered by the ALJ, the Board further ordered Starbucks to compensate Bussiere and Nowakowska for any "direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them, including reasonable search-for-work and interim employment expenses, if any." App. 7 n.3 (citing *Thryv*). The specific remedies to be ordered under the umbrella of "any direct or foreseeable pecuniary losses" have not yet been determined; an ALJ will make that decision at a future compliance proceeding. Starbucks moved for reconsideration and the Board affirmed its prior decision in June 2023.

The Board seeks enforcement of its order, and Starbucks cross-petitions for review of the issues discussed below.

## II. ANALYSIS

The Board had jurisdiction under 29 U.S.C. § 160(a). We have jurisdiction to review the petition for enforcement and the cross-petition under 29 U.S.C. § 160(e), (f). We apply plenary review to "questions of law and the NLRB's application of legal precepts." *NLRB v. ImageFIRST Unif. Rental Serv.*, 910 F.3d 725, 732 (3d Cir. 2018). We affirm its factual findings when they are supported by substantial

evidence, that is, "relevant evidence that a reasonable mind might accept as adequate to support a conclusion," *id.*, even when we to disagree with that conclusion. When the Board adopts an ALJ's decision, we review the ALJ's determinations; when it adopts the ALJ's decision in part, we review both the Board's and ALJ's decisions. *Trafford Distrib. Ctr. v. NLRB*, 478 F.3d 172, 179 (3d Cir. 2007).

## A. Constitutionality of ALJ Removal Protections

Starbucks first argues that the Board's ALJs are unconstitutionally insulated from presidential oversight.

The Board appoints its ALJs. 5 U.S.C. § 3105; 29 U.S.C. § 154(a); NLRB, *Revision of Statement of Organization and Functions* § 201, 47 Fed. Reg. 20,888, 20,889 (May 14, 1982). They are removable only for cause as prescribed by the Civil Service Reform Act of 1978. 5 U.S.C. § 7521(a). The U.S. Merit Systems Protection Board (MSPB) determines whether cause to fire an ALJ exists. *Id.* MSPB members can be removed by the President only for cause. 5 U.S.C. § 1202(d).

The Board's ALJs oversee hearings and issue decisions to which parties can file exceptions that are reviewed by the Board. 29 C.F.R. §§ 102.45(a), 102.46(a). It has five members appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). They serve five-year, staggered terms and can only be removed "for neglect of duty or malfeasance in office." *Id.*

The combination of for-cause removal protections for ALJs, Board members, and MSPB members creates the layered insulation from presidential review to which Starbucks objects on constitutional grounds. More specifically, it contends that because Article II vests executive power in the President, U.S. Const. art. II, § 1, cl. 1, Officers of the United States cannot exercise executive power while insulated from presidential control by at least two layers of removal protections. *See Lucia v. SEC*, 585 U.S. 237, 251, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018) (holding that ALJs are Officers of the United States under the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483–84, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010) (holding that "multilevel protection[s] from removal" for inferior officers, defined as Officers of the United States **\*87** who report to another official below the President rather than to the President directly, are "contrary to Article II's vesting of the executive power in the President").

We lack jurisdiction to consider this claim under 29 U.S.C. § 160(e) because Starbucks failed to raise it before the Board, and no extraordinary circumstances excuse that failure. Even if we had jurisdiction under the NLRA, Starbucks fails to establish standing to bring this claim because it does not demonstrate injury-in-fact from the removal protections at issue.

### 1. Jurisdiction to Review Removal Protections

We lack jurisdiction to review issues that were not raised before the Board except in

"extraordinary circumstances." 29 U.S.C. § 160(e). Starbucks concedes that it failed to raise this challenge before the Board but contends that extraordinary circumstances are present here. It relies principally on *Advanced Disposal Services East, Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016). There we concluded that a challenge to the constitutionality of the appointment of a regional director within the agency presented an extraordinary circumstance because it went to "the composition of the NLRB, and thus implicate[d] its authority to act." *Id.* at 600.

A challenge to an appointment is meaningfully distinct from a challenge to removal protections. The latter does not call into question the ALJ's or the Board's core authority to act. The Supreme Court instructs that where an official's removal protections are unconstitutional, he can still carry out his duties, which does not hold true if his appointment was unconstitutional. *Collins v. Yellen*, 594 U.S. 220, 257–59 & n.23, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021) (concluding that a constitutional defect in the removability of an officer did not affect the officer's ability to act); *Seila Law LLC v. CFPB*, 591 U.S. 197, 232, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020) (considering whether the removal protection for the Director of the Consumer Financial Protection Bureau (CFPB) was severable from the rest of the statutory scheme because, if so, "then the CFPB may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President"). At base, "there is no reason to regard any of the actions taken" by the ALJ in this case "as void." *Collins*, 594 U.S. at 257–58, 141 S.Ct. 1761. The ALJ was properly appointed and operating within his jurisdiction. *Id.* No one suggests otherwise.

Starbucks next contends that this challenge presents an extraordinary circumstance because the removal-protections claim is outside the Board's expertise, citing *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 194, 143 S.Ct. 890, 215 L.Ed.2d 151 (2023). But the question in *Axon* was whether the Securities Exchange Act and the Federal Trade Commission Act precluded district courts from exercising jurisdiction over a challenge where no FTC administrative proceeding had taken place. *See id.* at 180, 143 S.Ct. 890. Here, by contrast, agency proceedings have already happened, and Starbucks could have raised its challenge before the Board but chose not to do so. The Court in *Axon* also addressed a much different statute from the NLRA "extraordinary circumstances" provision before us. It is thus not on point.

Starbucks similarly relies on *Carr v. Saul*, 593 U.S. 83, 141 S.Ct. 1352, 209 L.Ed.2d 376 (2021), for the proposition that agency adjudications are "ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Id.* at 92, 141 S.Ct. 1352. In *Carr*, there was **\*88** no statute or regulation requiring the petitioners to raise first their challenge in administrative proceedings akin to the NLRA here. *See id.* at 88, 141 S.Ct. 1352. Those cases do not support this challenge involving an extraordinary circumstance that overcomes the statutory exhaustion bar.

## 2. Standing to Challenge Removal Protections

Even if we had jurisdiction under the NLRA, we would not reach the merits of this issue because Starbucks lacks standing. To establish it, a litigant must demonstrate that it was injured in fact, that the injury is "fairly traceable" to the challenged conduct, and that the injury will be "redressed by a favorable decision" from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (cleaned up). Starbucks cannot demonstrate an injury-in-fact. In discussing injury from unconstitutional removal protections, the Supreme Court listed examples of how such a harm might be demonstrated:

> Suppose, for example, that the President had attempted to remove a[n official] but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by [the official] and had asserted that he would remove the [official] if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Collins*, 594 U.S. at 259–60, 141 S.Ct. 1761. In other words, a challenger must show that the constitutional infirmity actually caused harm.

Starbucks' assertion that the ALJ in this case "might have altered his behavior" if there were closer presidential supervision, Starbucks Opening Br. 29 (quoting *Collins*, 594 U.S. at 260, 141 S.Ct. 1761), is simply speculation. Other courts of appeal have rejected removal-protection challenges to agency officials on the basis that the challengers could not show any harm from the alleged constitutional violation. *See K & R Contractors, LLC v. Keene*, 86 F.4th 135, 148–49 (4th Cir. 2023) (Department of Labor ALJs); *Calcutt v. FDIC*, 37 F.4th 293, 316–19 (6th Cir. 2022) (FDIC Board and ALJs), *rev'd on other grounds per curiam*, 598 U.S. 623, 143 S.Ct. 1317, 215 L.Ed.2d 557 (2023).

Starbucks also contends that we should distinguish between the sort of retrospective relief discussed in *Collins* and prospective relief. Starbucks lodges this request because it will appear before an ALJ again to determine how much it owes its former employees in a remedial compliance proceeding. Starbucks again relies on *Axon*, this time for the proposition that proceeding before an unaccountable ALJ is a "here-and-now injury." 598 U.S. at 191, 143 S.Ct. 890. *Axon* is again off point, this time because it concerned the question of a district court's jurisdiction when no agency proceedings had taken place. *Id.* at 185, 143 S.Ct. 890. Put simply, *Axon* addressed whether the plaintiff must proceed before an agency at all, whereas here the prospective-injury argument has less force. Starbucks already was before the ALJ and twice before

the Board, and the only prospective proceeding is a compliance determination. Though we need not definitively decide the issue today because we lack jurisdiction under the NLRA, it is worth noting that other courts of appeal have declined to distinguish between retrospective and prospective relief when applying *Collins*. *See Calcutt*, 37 F.4th at 316 & n.9; *CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023); **\*89** *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022), *rev'd on other grounds*, 601 U.S. 416, 144 S.Ct. 1474, 218 L.Ed.2d 455 (2024).

Starbucks also requests remand for discovery to establish its injury claims, but that is not necessary. It can only speculate that the ALJ's removal protections created bias in some way, and it provides us with no reason to think that it could show any more concrete injury on remand, even if it was allowed to address prospective injury.

In sum, because we lack jurisdiction to hear this constitutional claim and Starbucks lacks standing to raise it, we decline to reach its merits.

### B. Substantial Evidence

The ALJ and the Board concluded that Starbucks violated the NLRA by terminating Nowakowska and Bussiere and by reducing Nowakowska's hours in response to their labor organization activities. The ALJ and the Board applied the *Wright Line* burden-shifting framework. *See MCPC, Inc. v. NLRB*, 813 F.3d 475, 487–88 (3d Cir. 2016) (citing and applying *Wright Line*, 251 N.L.R.B. 1083

(1980) (subsequent history omitted)). They first examined whether the Board had made a *prima facie* demonstration that the employees' protected conduct was a motivating factor in the employer's decisions. *See MCPC*, 813 F.3d at 488. The burden then shifted to the employer to demonstrate that the adverse actions would have happened even if the employees had not engaged in protected conduct. *Id.* Starbucks had to demonstrate by a preponderance of the evidence that it *would have* taken the same adverse action for legitimate reasons, not merely that it *could have* done so. *See Carpenter Tech. Corp. & United Steelworkers of Am. Int'l Union, AFL-CIO, CLC*, 346 N.L.R.B. 766, 773 (2006); *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 400, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), *overruled in part on other grounds by Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 276, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). The ALJ and the Board concluded that the agency met its burden at the first step, but that Starbucks failed to do so at the second step.

Starbucks' challenges on appeal pertain to the second step of this inquiry. It contends that the ALJ and the Board failed to consider contrary evidence, meaning their conclusions are not supported by substantial evidence. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). We conclude the findings—that Nowakowska's hours would not have been reduced, and she and Bussiere would not have been terminated but for their engagement in

protected labor organizing activity—meet the floor of substantial evidence. [2]

[2]    Judge Jordan doubts the ALJ's and the Board's factual conclusions. In his view, there is a great deal of evidence that Nowakowska's and Bussiere's behavior justified Starbucks' decision to terminate them. For example, Bussiere repeatedly did not wear his uniform as required and was so argumentative, demeaning, insubordinate, and generally obnoxious at work that even his coworkers complained about him to management. *See* App. 22 (listing multiple instances in which Bussiere did not wear his hat or apron as required, and that "several" employees told management that his "behavior ha[d] become a distraction"). Typically, Starbucks would be well within its rights, as Judge Jordan sees it, to terminate Bussiere for such behavior —behavior that appears to be the antithesis of the customer service that is central to Starbucks' value proposition. It appears to Judge Jordan that Bussiere's labor organizing activities served primarily to insulate him from discipline for his blatant deficiencies and enabled him to continue to perform his work poorly, and much the same can be said about Nowakowska.

Labor unions provide an important means for workers to organize and protect their rights. But the usefulness of labor organizing is undermined, in Judge Jordan's view, when "organizing" becomes a cover for employees to misbehave and underperform, to the detriment of their colleagues and the organization. Nevertheless, he agrees we are bound by the substantial evidence standard of review, and there is "more than a scintilla" of evidence to support the ALJ's and NLRB's contrary conclusions, *New Concepts for Living, Inc. v. NLRB*, 94 F.4th 272, 280 (3d Cir. 2024) (quotation omitted), so we cannot explore the other ways of reading this record.

**\*90  1. Substantial Evidence: Bussiere's Termination**

We begin with Bussiere's termination. The ALJ concluded that Starbucks failed to establish that it would have discharged Bussiere absent his protected activities. His termination paperwork said that he knowingly spread a false rumor—telling fellow barista Simon Allen that he (Allen) would be fired—and exhibited disruptive behavior. The ALJ found there was no credible evidence that Bussiere knew the rumor was false. Indeed, telling Allen was protected conduct, which Starbucks does not challenge on appeal. The ALJ further determined that discharging Bussiere was motivated by animus against his other protected activity (labor organizing), as evidenced by the email from Vaughan to Dragone in January 2020 quoted above. The Board agreed with the ALJ's conclusions.

Starbucks contends that it would have terminated Bussiere, regardless of his organizing activities, for "disrupting other workers, making it harder to run the store efficiently." Starbucks Opening Br. 36. It argues that the ALJ failed to consider all of

the evidence of Bussiere's disruptive behavior. We disagree. The ALJ did consider a majority of the examples Starbucks raised. *See* App. 21 n.15 (discussing a warning and coaching Bussiere received for arriving late to work); App. 24 (noting that he left his primary store location short-staffed by covering shifts at other locations); App. 27 n.32 (addressing his allegedly distracting and divisive effect on other employees); App. 26–27 n.30 (discussing an incident in which he spoke about timing his shift supervisor's breaks). The only incidents Starbucks raises that the ALJ did not discuss regarding the termination are (1) Bussiere's failure to wear his hat and (2) failure to stock the pastry case. But the ALJ considered these incidents in relation to a separate NLRA violation that Starbucks does not challenge on appeal, a written warning to Bussiere issued on November 21, 2019.

More importantly, the ALJ's finding that Starbucks would not have fired Bussiere but for his protected activities is supported by substantial evidence. For instance, the notice of termination is primarily based on the spreading of the rumor, a protected activity. It explicitly said that Bussiere had "been previously counseled and disciplined about disrupting operations and partners while they are working." App. 1456. In context, that statement in the notice does not provide an additional basis for termination; it merely bolsters Starbucks' assertion that spreading the rumor was disruptive.

In short, substantial evidence supports the ALJ and the Board's conclusion that Bussiere would not have been discharged in the absence of his protected activities. That is enough even were we inclined on our own to decide otherwise.

## 2. Substantial Evidence: Nowakowska's Termination

Turning to Nowakowska's termination, the ALJ concluded that Starbucks **\*91** "failed to meet its burden of establishing that it would have discharged [her] in the absence of her protected activities" because it did not "demonstrate[ ] a pattern of discharging partners for comparable conduct."[3] App. 35. Instead, the "pattern overwhelmingly has been to issue written warnings for rude and unprofessional conduct toward a customer or manager." *Id.* The Board again agreed with the ALJ's findings and conclusions.

3        Starbucks refers to its employees as "partners" in its internal materials.

Starbucks argues that the ALJ ignores evidence that Nowakowska repeatedly violated a company policy prohibiting types of "serious misconduct" that may provide grounds for "immediate separation from employment," including "abusive behavior toward partners, customers or vendors." App. 1029 (company policy). Starbucks' citation to the text of a policy is not particularly persuasive in rebutting the ALJ's finding about what happened in practice.

More specifically, Starbucks contends that Nowakowska would have been terminated based on her conduct in January 2020, as part of a pattern of broader infractions, and that the ALJ's conclusion to the contrary was unsupported by substantial evidence. The January incident, as explained above, involved

a customer requesting free tea bags and butter and Nowakowska responding, "[N]ow you want the butter[?]". App. 279. The ALJ concluded that, while "intemperate and rude," this was an isolated incident and would not justify termination in comparison to similar incidents with other employees. App. 35. The Board agreed. Management did not follow up about the incident before Nowakowska's termination, nor did it ask for her version of events. This suggests that management would not have terminated her based on this incident alone.

As for the pattern of infractions, the ALJ did examine the events Starbucks argues he ignored. It points to an incident in which Nowakowska allegedly raised her voice at the store manager, Vaughan, in front of customers. Nowakowska said she only spoke loudly to be heard above the store's din. The ALJ considered this issue and found Nowakowska's testimony more credible than Vaughan's. The ALJ was in a better position to assess credibility than we are on appeal. *See, e.g.*, App. 25 n.29 (discussing the ALJ's assessment of witnesses' demeanor). Starbucks also alleges that she "upset a customer by not letting her know that a drink was ready," Starbucks Opening Br. 34, but, in the same bit of testimony on which Starbucks relies, Nowakowska went on to say that the customer was not upset. It then alleges that she "slammed drinks on the counter and failed to greet or thank customers." *Id.* Nowakowska contested the allegation about slamming cups. Even if true, Vaughan talked to other baristas about similar failings, yet they were not subsequently disciplined.

The ALJ also persuasively explained that other baristas who were fired or issued final warnings for their demeanor toward customers had behaved much worse than Nowakowska. One such barista was "yelling and swearing at the store manager," "acting in a threatening manner," and "arguing with a disabled customer." App. 35. Another, who was not discharged, ignored and hurried customers, was distracted by his phone, made drinks incorrectly, watched TV during his shifts, refused to help coworkers, mistreated coworkers, mishandled cash, and failed to close the store properly. Another argued with and rolled her eyes at a customer, consistently failed to follow the dress code to the point that she could not work her **\*92** shifts because her clothing was unsanitary or unsafe, and stated in front of customers that she wished to be fired because she would not get unemployment benefits if she quit. That employee still received a warning on the dress code issues before being fired. Another barista irregularly attended his shifts, exhibited bullying behavior, grabbed items out of his coworkers' hands, pushed his supervisor, refused to talk with his supervisor about the issues, created a scene in front of customers, and refused to take a break when directed to do so. He received multiple warnings in response to those incidents. These examples are arguably more serious than the incidents in which Nowakowska was involved, thus supporting the ALJ and the Board's conclusions.

In summary, substantial evidence supports the ALJ and the Board's conclusion: Starbucks failed to establish that it would have discharged Nowakowska in the absence of her protected activities.

### 3. Substantial Evidence: Nowakowska's Reduced Hours

As for Nowakowska's reduction in hours, the ALJ concluded that her protected activity was a motivating factor in Starbucks' decision. He relied primarily on two findings: that Nowakowska's "reduction[ ] of 30–40 percent was one of the most significant of any of those who remained on the schedule," and that Vaughan told her he reduced her hours in response to her workplace performance, referencing a warning she received on October 29, 2019. App. 21. The ALJ also concluded that warning was an unfair labor practice in response to protected organizing activity, a conclusion that Starbucks does not challenge on appeal. The Board affirmed that determination.

Vaughan's statement, in combination with the uncontested conclusion that the October 29 warning was an unfair labor practice, presents substantial evidence that the reduction in hours was a response to protected organizing activities. We need not reach whether Nowakowska's reduction in hours was proportional to reductions that other employees experienced. Vaughan's statement and the October 29 warning, on their own, are enough to conclude that the ALJ and the Board's finding is supported by substantial evidence.

### C. After-Acquired-Evidence Defense

Starbucks argues in the alternative that, even if Nowakowska and Bussiere's terminations violated the NLRA, the Board should not award them reinstatement and should limit backpay. Starbucks explains that it would have fired them anyway based on after-acquired evidence that they were recording their coworkers (and, inadvertently, customers) without their consent in violation of company policy and Pennsylvania law. However, substantial evidence supports the conclusion that Starbucks was aware of the recording activity before it terminated Nowakowska and Bussiere, meaning the evidence was not "after-acquired." Its contention is therefore unpersuasive.

When an employer would have discharged an employee on lawful grounds based on evidence acquired after an unlawful termination, reinstatement is not an appropriate remedy under the NLRA. *See 1621 Route 22 W. Operating Co., LLC v. NLRB ("Somerset")*, 825 F.3d 128, 149 n.14 (3d Cir. 2016) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)). "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known **\*93** of it at the time of the discharge." *McKennon*, 513 U.S. at 362–63, 115 S.Ct. 879. In other words, to invoke the defense, the employer must demonstrate (1) the employee engaged in the misconduct, (2) it was unaware of the misconduct at the time of the employee's discharge, and (3) it would have discharged a similarly situated employee for that misconduct alone. *Somerset*, 362 N.L.R.B. 961, 962 (2015), *enf'd*, 825 F.3d 128 (3d Cir. 2016). If the employer makes such a showing, reinstatement is not appropriate and

backpay is only available from the time of the unlawful termination to when the employer acquired knowledge of the misconduct. *See McKennon*, 513 U.S. at 361–62, 115 S.Ct. 879. Any ambiguities are resolved against the employer. *John Cuneo, Inc.*, 298 N.L.R.B. 856, 857 n.7 (1990).

The ALJ found that Nowakowska secretly recorded four meetings with supervisors. Bussiere made about 30 recordings of conversations with management. Both testified that they made the recordings out of fear of retaliation for their organizing activities. Vaughan testified that he saw Nowakowska and Bussiere each separately attempt to record a conversation with him, and he reported an attempted recording to Dragone who in turn reported it to Henderson. Melissa Maimon, an operations coach who helped Vaughan when he started his role as a store manager, corresponded with Vaughan and Dragone about employees making recordings via email, though the specific employees were not named. The emails were also shared with Henderson, Eckensberger, and Nathalie Cioffi, the Partner Resources Director for the Mid-Atlantic Region. Bussiere also texted Vaughan transcripts of the recordings. Vaughan approached Nowakowska a week later, perhaps believing she was the source of the transcripts, and told her she lacked permission to record him. Bussiere also sent a transcript of a conversation with Vaughan to Dragone.

Based on this evidence, the ALJ concluded that Starbucks "knew or had reason to know" of the recordings, and hence its after-acquired-evidence defense failed. App. 38. The ALJ misstated the legal standard because the after-

acquired-evidence defense fails if Starbucks *knew* about the recordings, not if it had reason to know. *McKennon*, 513 U.S. at 362–63, 115 S.Ct. 879. The Board affirmed the ALJ using the proper standard, finding that Starbucks did in fact know that the recordings were taking place.

Substantial evidence supports the Board's finding that Starbucks knew about the recordings before it terminated Nowakowska and Bussiere. It first argues that it was aware only that the employees *attempted* to make recordings. But Starbucks does not rebut the ALJ and the Board's finding that Vaughan reported the activity to Dragone, who in turn reported it to Henderson, nor does it explain away Vaughan's awareness of transcriptions of the recordings.

Starbucks also argues that substantial evidence did not support that it knew the recordings captured conversations between coworkers (as opposed to between a manager and employee) and between customers. This position is unpersuasive because any recording, unless authorized by law or consented to by the party recorded, is not permitted under Starbucks' policy. Neither party argues that mere knowledge of the recordings, even without their full scope, would have been insufficient for Starbucks to terminate the two employees. The Board came to the same persuasive conclusion:

> [Starbucks] insists that[,] in any case, it did not know the full scope of the employees' recording activity and so full

**\*94** relief should be denied, despite what it did know. We reject that argument. As the Board has found, [Starbucks] knew enough to establish that (by its own standard) its no-recording policy and Pennsylvania law had been violated—but did not discharge the two employees on that basis.

App. 44 n.4.

In short, substantial evidence supports the Board's finding that Starbucks was aware that the employees were engaged in recording. It took no adverse action against them at that time, even though the conduct would have warranted termination under company policy. Starbucks thus has not met its burden to show that it was unaware, when the terminations occurred, of the purportedly after-acquired evidence.

The Board also concluded that, even if Starbucks had not known before the terminations about the recordings, they could not justify termination because they were protected under the NLRA. Starbucks contests this conclusion on appeal, but we decline to reach the question. Because Starbucks knew about the recordings before the termination, they cannot be used to justify the firings here regardless of their legal status.

### D. *Thryv* Remedy

In *Thryv*, the Board determined that, "in all cases in which [its] standard remedy would include an order for make-whole relief," it will also "expressly order that the respondent compensate affected employees for *all direct or foreseeable pecuniary harms* suffered as a result of the respondent's unfair labor practice." 2022 WL 17974951 at \*9 (emphasis in original). Starbucks argues that this remedy is inconsistent with the NLRA and that reading the statute otherwise would violate the Constitution's Seventh Amendment right to a jury trial and Article III, nondelegation principles, and Starbucks' due-process rights.

As we will explain, the nondelegation and due-process arguments are forfeited. The order that Starbucks must "compensate Bussiere and Nowakowska for any direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them, including reasonable search-for-work and interim employment expenses, if any, regardless of whether these expenses exceed interim earnings," App. 7 n.3, exceeds the Board's authority under the NLRA. We therefore vacate that portion of the Board's order and remand for further proceedings consistent with this opinion. We need not reach Starbucks' constitutional avoidance arguments because the order is not consistent with the statute.

### 1. Forfeiture of Certain *Thryv* Remedy Challenges

If Starbucks failed to raise some of its challenges to the *Thryv* remedy before the Board, they are forfeited and we lack jurisdiction to entertain them barring

extraordinary circumstances.[4] *See* 29 U.S.C. § 160(e); *Atl. City Elec. Co. v. NLRB*, 5 F.4th 298, 306–07 (3d Cir. 2021). The question for forfeiture is whether the Board received "adequate notice of the basis for the objection[s]." *NLRB v. FedEx Freight, Inc.*, 832 F.3d 432, 437 (3d Cir. 2016) (quoting *FedEx Freight, Inc. v. NLRB*, 816 F.3d 515, 521 (8th Cir. 2016)); *see also New Concepts for Living*, 94 F.4th at 282.

[4] Starbucks does not argue that extraordinary circumstances are present for its challenges to the *Thryv* remedy.

 **\*95** Starbucks failed to raise its nondelegation doctrine argument—that the Board's reading of the NLRA would transfer Congress's legislative power to the agency without an intelligible principle to constrain that delegation—in its briefing before the ALJ or the Board or in its motion for reconsideration. Nor can it rely on the partial dissent in *Thryv* to put the Board on notice, because the dissent did not address nondelegation. 2022 WL 17974951 at \*25–29. Similarly, the due-process objection that Starbucks raised before the Board—that the Board failed to allege the specific pecuniary relief sought under *Thryv*—is different from the due-process objection it raises on appeal, that the Board imposed the *Thryv* remedy without prior warning. The partial dissent in *Thryv* also does not touch on this due-process objection. *Id.* We therefore hold that the Board did not receive adequate notice of the bases for Starbucks' nondelegation and due-process objections. Those objections are thus forfeited.

The Board was on adequate notice, however, regarding the statutory interpretation and Seventh Amendment objections.[5] Starbucks pointed it to the partial dissent in *Thryv* and the concerns that dissent identified, which included the Seventh Amendment. *See id.* at \*25–27. Starbucks further argued in its briefing before the Board that the NLRA does not allow monetary damages beyond backpay and benefits, referring also to the Act's legislative history. The company described the *Thryv* remedy as granting "consequential damages," App. 1982, and it argued that such a remedy was "not an equitable concept but instead a legal principle typically preserved for juries in court," App. 1980. We therefore hold that Starbucks' statutory interpretation and Seventh Amendment challenges were not forfeited.

[5] Putting the Board on notice of the Seventh Amendment objection serves to put it on notice of the Article III objection as well. The Supreme Court has suggested that the two provisions are connected. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). There is recent scholarship suggesting "unlinking" them in light of the Court's decision in *Securities and Exchange Commission v. Jarkesy*, —— U.S. ——, 144 S. Ct. 2117, 219 L.Ed.2d 650 (2024). *See* Note, *Unlinking the Seventh Amendment and Article III*, 138 Harv. L. Rev. 588 (2024). We take no position on that.

### 2. Statutory Interpretation and the *Thryv* Remedy

Section 10(c) of the NLRA authorizes the Board to order employers to "cease and desist from" unfair labor practices and to "take such affirmative action[,] including reinstatement of employees with or without back pay, as will effectuate the policies of [the NLRA]." 29 U.S.C. § 160(c). Starbucks asserts this section only authorizes equitable relief and the *Thryv* remedy allows legal relief in the form of damages.

Traditionally, "a court of equity" could "restrain[ ] ... a contemplated or threatened action" and "require affirmative action." *Ex parte Lennon*, 166 U.S. 548, 556, 17 S.Ct. 658, 41 L.Ed. 1110 (1897). By empowering the Board to order entities "to cease and desist" and to take "affirmative action," Congress granted it the authority to order equitable remedies. *See* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 553 (2016) (Equitable remedies "compel action or inaction."). The NLRA therefore limits the Board's remedial authority to equitable, not legal, relief.

Such a reading is consistent with Supreme Court precedent. In discussing the Board's "power to order affirmative relief," the Court has explained that "Congress did not establish a general scheme authorizing **\*96** the Board to award full compensatory damages for injuries caused by wrongful conduct." *UAW-CIO v. Russell*, 356 U.S. 634, 642–43, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958). And the Court has compared the Board's orders to injunctions, which are "traditionally viewed as 'equitable.' " *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

The Board can still award monetary relief based on what the employer withheld as a result of an unfair labor practice. "[R]einstatement ... with or without back pay" is, as stated by Congress, a type of "affirmative action" that the Board can order. 29 U.S.C. § 160(c). Backpay is based on what an employer has wrongfully withheld from an employee, so it has been "characterized ... as an integral part of an equitable remedy, a form of restitution." *Curtis v. Loether*, 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). And while it is true that "the Board for many years has ordered that employees be made whole for a variety of monetary losses suffered as a result of an unfair labor practice," *Thryv*, 2022 WL 17974951 at *25 (Kaplan and Ring, Members, concurring in part and dissenting in part), it has done so—at least until *Thryv*—on a case-by-case basis, with awards that provided workers with the benefits of their employment contracts in a way that likely fell under the umbrella of a backpay award. *See, e.g., Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540–41, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943) (refunding mandatory union dues that were deducted from workers' wages); *NLRB v. Louton, Inc.*, 822 F.2d 412, 413–14 (3d Cir. 1987) (including health insurance benefits and medical expenses as part of the backpay award); *Lou's Transp., Inc. v. NLRB*, 945 F.3d 1012, 1026 (6th Cir. 2019) (including lost retirement benefits as part of the backpay award). Even though those awards included more than wages alone, they were closely tied to the equitable remedy of backpay.

That changed with the Board's decision in *Thryv*. We repeat the Board there held that "in all cases in which [its] standard remedy would include an order for make-whole relief,"

it will also "expressly order that the respondent compensate affected employees for *all direct or foreseeable pecuniary harms* suffered as a result of the respondent's unfair labor practice." 2022 WL 17974951 at *9 (emphasis in original). Despite a vigorous dissent, the Board reasoned that "standardizing ... make-whole relief to expressly include the direct or foreseeable pecuniary harms suffered by affected employees is necessary to more fully effectuate the make-whole purposes of the Act." *Id.* at *10.

Our case, like *Thryv*, purports to grant broad compensatory relief. The Board ordered Starbucks to "compensate Bussiere and Nowakowska for any direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them, including reasonable search-for-work and interim employment expenses, if any, regardless of whether these expenses exceed interim earnings." App. at 7 n.3. That Starbucks must "compensate" the employees for losses "incurred as a result" of Starbucks' wrongdoing, App. at 7 n.3, resembles an order to pay damages. *See Damages*, Black's Law Dictionary (12th ed. 2024) (defining "damages" as "[m]oney ... ordered to be paid to[ ] a person as compensation for loss or injury"). "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.' " *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (quoting **\*97** *Cooper Indus. v. Leatherman Tool Grp.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001)). Here, the order is plainly meant to compensate Bussiere

and Nowakowska for losses resulting from Starbucks' unfair labor practices.

Simply put, the Board's current order exceeds its authority under the NLRA. Thus, we vacate that portion of the order and remand for further proceedings. While the Board can certainly award some monetary relief to the employees, that relief cannot exceed what the employer unlawfully withheld.

Starbucks, making a constitutional avoidance argument, contends that the Board's interpretation of the NLRA would require a jury trial under the Seventh Amendment and an adjudication in federal court under Article III. Because we agree that the Board's order is inconsistent with the NLRA, we need not reach these constitutional questions.

### III. CONCLUSION

We lack jurisdiction to consider Starbucks' constitutional challenge to layered ALJ removal protections, and, in any event, Starbucks fails to demonstrate injury stemming from those protections. Substantial evidence supports the Board's unfair-labor-practice conclusions with respect to Nowakowska's termination and reduction in hours and Bussiere's termination. Substantial evidence also supports the conclusion that Starbucks knew about the employees' recording activity prior to their terminations; it cannot rely on that purportedly after-acquired evidence to avoid reinstatement and limit backpay. So, we grant the Board's petition for enforcement and deny Starbucks' cross-petition for review as to the constitutionality of the ALJ's removal

protections, whether substantial evidence supported the Board's conclusions, and its ruling on the after-acquired evidence.

We vacate, however, the portion of the Board's order that requires Starbucks to "compensate Bussiere and Nowakowska for any direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them, including reasonable search-for-work and interim employment expenses, if any, regardless of whether these expenses exceed interim earnings." App. 7 n.3. That portion exceeds the Board's authority under the NLRA. We thus remand for further proceedings consistent with this opinion.

**All Citations**

125 F.4th 78

---

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.